MICHIGAN MANUFACTURERS ASSOCIATION v DIRECTOR,
WORKERS' DISABILITY COMPENSATION BUREAU

Docket No. 72432. Submitted March 13, 1984, at Lansing.—Decided
May 15, 1984. Leave to appeal applied for.

The Michigan Manufacturers Association brought an action in
Ingham Circuit Court against James Brakora, as director of the
Workers' Disability Compensation Bureau, Edward D. Wolfe, as
chairman of the Silicosis, Dust Disease and Logging Industry
Compensation Fund, and Nancy Baerwaldt, as the State Com-
missioner of Insurance, seeking to have the provisions of the
Worker's Disability Compensation Act relating to the creation
and financing of the Logging Industry Compensation Fund
declared to be unconstitutional. Plaintiff alleged that, with
respect to that fund, the act impermissibly delegated legislative
authority to a private voluntary association, that the provisions
with respect to that fund were violative of the title-object
clause of the Michigan Constitution, and that the fund and its
financing scheme were violative of the equal protection and due
process provisions of the Michigan and United States Constitu-
tions. The Michigan Association of Timbermen was permitted
to intervene as a party defendant. Plaintiff moved for summary
judgment or, in the alternative, for a preliminary injunction.
Thomas L. Brown, J., denied plaintiff's motion and, instead,
dismissed plaintiff's complaint. Plaintiff appealed. *Held:*

1. Since the Legislature incorporated by reference the provi-
sion in an existing insurance industry manual defining what
constituted employment in the logging industry and evidenced
no intent to incorporate any amended definition contained in
any amendment to or replacement of the manual designated in
the statute, there was no constitutionally impermissible delega-
tion of legislative authority.

2. Since the purpose of the provisions creating the Logging

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 73 Am Jur 2d, Statutes § 28.
[2, 4] 81 Am Jur 2d, Workmen's Compensation § 15.
[3, 4] 73 Am Jur 2d, Statutes §§ 97 *et seq.,* 125.
[5-7] 81 Am Jur 2d, Workmen's Compensation § 17.
[8] 81 Am Jur 2d, Workmen's Compensation § 16.

Industry Compensation Fund are germane to the underlying stated purpose contained in the title to the Worker's Disability Compensation Act, the title-object clause of the Michigan Constitution has been satisfied.

3. The purpose of the creation of the fund, that being to preserve the Michigan logging industry from potentially ruinous workers' compensation rates, is rationally related to a reasonable governmental interest; accordingly, the creation of the fund is not violative of the constitutional right to equal protection of the laws.

4. Since the fund is for a valid public purpose and the statutory scheme is not arbitrary and unreasonable, the constitutional due process requirement is satisfied.

Affirmed.

1. STATUTES — CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE AUTHORITY — INCORPORATION BY REFERENCE.

A statute which incorporates in whole or in part an existing statute, code, rule, or regulation by reference does not effect an unconstitutional delegation of legislative authority; it is only where a statute adopts by reference future legislation or rules that there is an unconstitutional delegation of legislative authority.

2. WORKERS' COMPENSATION — CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE AUTHORITY — LOGGING INDUSTRY COMPENSATION FUND.

It was not an unconstitutional delegation of legislative authority to incorporate by reference in a provision of the Worker's Disability Compensation Act relating to the logging industry the definition of employment in the logging industry as contained in a workers' compensation and employers liability insurance manual filed with and approved by the insurance commissioner at the time of the enactment of the legislation where there is no indication of a legislative intent that any subsequent changes in the manual would be incorporated into the statute; under such circumstances, the incorporation of the definition contained in the manual was a valid and proper exercise of legislative authority and was not an improper delegation of legislative authority to an insurance association to set the statutory standard (MCL 418.501[3]; MSA 17.237[501][3]).

3. CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE.

The title-object provision of the Michigan Constitution does not

require that the title of an act be an index of all the provisions of an act but rather requires that the title of the act comprehensively declare in general terms the main general object or purpose of the act and that all provisions of the body of the act not directly mentioned in the title of the act be germane, auxiliary, or incidental to the stated general object or purpose (Const 1963, art 4, § 24).

4. WORKERS' COMPENSATION — LOGGING INDUSTRY COMPENSATION FUND — CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE.

The purpose of the provisions in the Worker's Disability Compensation Act pertaining to the Logging Industry Compensation Fund, while not specifically mentioned in the title to the act, are germane to the stated general purposes contained in the title of the act and are thus not violative of the title-object provision of the Michigan Constitution (Const 1963, art 4, § 24; MCL 418.501 *et seq.;* MSA 17.237[501] *et seq.*).

5. CONSTITUTIONAL LAW — WORKERS' COMPENSATION — STATUTES — EQUAL PROTECTION.

The burden is on a party challenging a provision of the Worker's Disability Compensation Act on equal protection grounds to show that the classification is arbitrary and does not bear a rational relation to a permissible legislative objective (MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.*).

6. CONSTITUTIONAL LAW — WORKERS' COMPENSATION — STATUTES — EQUAL PROTECTION.

The test to determine the constitutionality of a provision of the Worker's Disability Compensation Act on grounds of equal protection is whether any state of facts, either known or which could reasonably be assumed, supports the legislative judgment (MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.*).

7. WORKERS' COMPENSATION — LOGGING INDUSTRY COMPENSATION FUND — CONSTITUTIONAL LAW — EQUAL PROTECTION.

The Logging Industry Compensation Fund and the related tax on employers is for the valid public purpose of preserving an important segment of the state's industrial base, with the associated benefits to the state, from potentially ruinous workers' compensation rates; accordingly, the creation of that fund and the imposition of the related tax is rationally related to a reasonable governmental interest and is thus not violative of the constitutional rights to equal protection of the laws (MCL 418.501 *et seq.;* MSA 17.237[501] *et seq.*).

8. WORKERS' COMPENSATION — LOGGING INDUSTRY COMPENSATION
   FUND — CONSTITUTIONAL LAW — DUE PROCESS.
   The statutory provisions creating the Logging Industry Compensation and its financing scheme are not so arbitrary and unreasonable as to constitute an unconstitutional taking of money; since that fund and its financing scheme serves a valid public purpose, the statutory provisions creating the fund and its financing scheme are not violative of the constitutional right to due process (MCL 418.501 *et seq.;* MSA 17.237[501] *et seq.).*

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, Fred W. Batter,* and *M. Diane Vogt),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard F. Zapala* and *Sterling W. Schrock,* Assistants Attorney General, for defendant.

*Cooper & Fink* (by *Daniel S. Cooper),* for intervening defendant.

Before: SHEPHERD, P.J., and ALLEN and A. E. KEYES,* JJ.

PER CURIAM. Plaintiff commenced an action on May 5, 1982, in Ingham County Circuit Court, seeking declaratory and injunctive relief. Plaintiff contended that the Logging Industry Compensation Fund provisions of Chapter 5 of the Worker's Disability Compensation Act, MCL 418.501 *et seq.;* MSA 17.237(501) *et seq.,* were unconstitutional. These provisions create a statutory scheme whereby employers in the logging industry are repaid out of a special fund for workers' disability payments paid to employees in excess of $12,500. Plaintiff made a motion for summary judgment, or, in the alternative, for a preliminary injunction.

* Circuit judge, sitting on the Court of Appeals by assignment.

The trial court denied plaintiff's motion and dismissed the complaint in accordance with its written opinion of May 27, 1983. We believe that the excellent opinion written by Judge Thomas L. Brown of the Ingham County Circuit Court should be adopted as our opinion, and we do so by quoting it in its entirety:

### OPINION

"Plaintiff, Michigan Manufacturers Association, moves in this court for a summary judgment pursuant to GCR 1963, 117.2(3), or in the alternative, for a preliminary injunction. In support of its motion plaintiff represents that Chapter 5, 1980 PA 357 and 1982 PA 32, which amended certain sections of Chapter 5, 1969 PA 317, Worker's Disability Compensation Act of 1969, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.* (hereinafter the Act), are unconstitutional for the following reasons:

"1) as amended § 501(3) impermissibly delegates legislative authority to a private, nongovernmental, voluntary association in violation of Const 1963, art 4, § 1;

"2) amended Chapter 5 contains more than one object which is not expressed in its title in violation of Const 1963, art 4, § 24;

"3) amended Chapter 5 violates the Equal Protection Clauses of both the Michigan and the United States Constitutions; and

"4) amended Chapter 5 violates the Due Process Clauses of both the Michigan and the United States Constitutions.

### I

"In 1980 the legislature amended the Act enacting 1980 PA 357b which became effective January 1, 1982. This enactment established the Logging Industry Compensation Fund, MCL 418.501(2); MSA 17.237(501)(2) (hereinafter the Fund), in addition to the self-insurers security fund, second injury fund, and silicosis and dust fund. The purpose of the Fund is to reimburse logging employers or their insurance carriers for all weekly

benefits paid to eligible workers in excess of $12,500.00. MCL 418.531(1); MSA 17.237(531)(1). The Fund is provided sums of money by assessments imposed on all Michigan employers. MCL 418.551(2); MSA 17.237(551)(2). Several refinements to 1980 PA 357 were made by 1982 PA 32, effective March 10, 1982.

"Plaintiff contends that Chapter 5 of 1980 PA 357 and 1982 PA 32 in conjunction with 1982 PA 7 unconstitutionally delegates legislative power to private associations in violation of art 4, § 1 of the Michigan Constitution and is not a valid incorporation by reference. Plaintiff maintains that § 501(3) of the Act does not define employers who will be permitted to use the Fund and unconstitutionally delegates the power to create that definition to a private, nongovernmental association.

"Section 501(3) of the Act under 1980 PA 357 provides:

" 'As used in this section and sections 531 to 552b, "employment in the logging industry" means employment in the logging industry *as described in the section in the workmen's compensation and employers liability insurance manual,* entitled, "logging or lumbering and drivers code no. 2702" *which is filed with and approved by the commissioner of insurance.'* (Emphasis added.) MCL 418.501(3); MSA 17.237(501)(3).

"Under 1982 PA 32, this section states:

" 'As used in this chapter, "employment in the logging industry" means employment in the logging industry *as described in the section in the workmen's compensation and employers liability insurance manual,* entitled, "logging or lumbering and drivers code no. 2702", *which is filed with and approved by the commissioner of insurance.'* (Emphasis added.)

"This language clearly indicates that the standard by which to determine 'employment in the logging industry' is the definition contained in the manual, entitled, 'logging or lumbering and drivers code no. 2702'. Pursuant to the affidavit of Ronald C. Hempsted, the director of the Market Standards Division of the State of Michigan Insurance Bureau, the liability insurance manual, entitled 'logging or lumbering and drivers code no.

2702' was filed with and approved by the insurance commissioner at the time 1980 PA 357 and 1982 PA 32 were enacted. There is no legislative intent that any subsequent changes, amendments, or variations in the 'logging or lumbering and drivers code no. 2702' would also effectuate a change in the definition of 'employment in the logging industry'. The definition in existence at the time of the enactment of 1980 PA 357 and 1982 PA 32 is controlling. Therefore, this is an adoption of a definition already in existence in the public records of the state rather than a delegation of authority to an association to set a standard.

"The principle of statutory adoption or incorporation by reference of an existing statute, rule, or regulation has long been the rule in Michigan. *City of Pleasant Ridge v Governor,* 382 Mich 225, 244; 169 NW2d 625 (1969); *People v Urban,* 45 Mich App 255, 262; 206 NW2d 511 (1973); *People v De Silva,* 32 Mich App 707, 713; 189 NW2d 362 (1971). It has been held that an act which adopts by reference the whole or a portion of another statute or code incorporates the standard as it existed at the time of the adoption, and does not include subsequent modifications, amendments, or variations to the adopted statute or code. But, the adoption by reference of future legislation and rules are unconstitutional. *De Silva, supra,* p 714. Such is not the situation in this case.

"In § 501(3) of the Act the Legislature intended that the manual in existence at the time provisions of 1980 PA 357 and 1982 PA 32 were enacted to be the standard by which to determine 'employment in the logging industry'. The subsequent amendment to the manual by the National Association of Workers' Compensation Insurance and the enactment of 1982 PA 7, which becomes effective on January 1, 1983, does not affect this standard. Therefore the Act does not delegate authority to an association to create a standard but involves a valid adoption of a standard already in existence.

II

"Plaintiff next contends that the provisions of 1980 PA 357 and 1982 PA 32 contain more than one object

which is not expressed in its title in violation of Const 1963, art 4, § 24. Plaintiff argues that the object of these provisions is to subsidize the logging industry which is not embraced in the workers' compensation benefit scheme in the title of the Act.

"The title of the Act, as amended, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* reads as follows:

" 'AN ACT to revise and consolidate the laws relating to worker's disability compensation; and to repeal certain acts and parts of acts.'

"The title of the previous act, MCL 411.1 *et seq.;* MSA 17.141 *et seq.,* read in pertinent part:

" 'AN ACT to promote the welfare of the people of this state, relating *to the liability of employers for injuries or deaths* sustained by their employees, providing compensation for the disability or death resulting from occupational injuries or disease or accidental injury to or death of employees *and methods for the payment, and apportionment of the same, providing for assessments,* establishing an industrial accident board, defining its powers, providing for a review of its awards, making an appropriation to carry out the provisions of this act, and restricting the right to compensate or damages in such cases to such as are provided by this act.' (Emphasis added.)

"The primary objective of this act is the protection of the worker. The title of the act contains broad and comprehensive language covering the entire spectrum of worker compensation and the means by which such payment is to be effected. The phrases, 'liability of employer for injuries or deaths', 'methods for the payment, and apportionment of the same,' and 'providing for assessments,' call attention to the establishment of the Fund, the assessment of funds to be collected from the employers to maintain it, and the reimbursement from it to eligible employers. This is a method of effectuating compensation for workers' injuries—which furthers the general goal expressed in the title of the act.

"One of the purposes of the title-object limitation is to provide the public with adequate notice of the contents of a bill from its title. *Vernor v Secretary of State,* 179

Mich 157; 146 NW 338 (1914); *People v Wohlford,* 226
Mich 166, 168; 197 NW 558 (1924). However, a title
need not be an index to all the provisions the act
contains. *People v Denmark,* 74 Mich App 402, 413; 254
NW2d 61 (1977). The rule followed in Michigan is
stated in *Loomis v Rogers,* 197 Mich 265, 271; 163 NW
1018 (1917), as follows:
" 'if the act centers to one main general object or
purpose which the title comprehensively declares,
though in general terms, and if provisions in the body
of the act not directly mentioned in the title are ger-
mane, auxiliary, or incidental to that general purpose,
the constitutional requirement is met.'
"See also *Michigan Boiler & Sheet Iron Works v Dres-
sler,* 286 Mich 502, 508; 282 NW 222 (1938).
   "The title of the Act expressly refers to the liability
of the employers. The creation of the Fund is germane,
auxiliary, and incidental to the primary object of the
Act and need not be expressed in the title of the Act.
The provisions of 1980 PA 357 and 1982 PA 32 which
establish the Fund, although not expressed in the title
of the Act, are not in contravention of Const 1963, art
4, § 24.

### III

   "Plaintiff next challenges the constitutionality of the
Fund and the means by which it is contributed to on
the basis of Equal Protection Clauses of both the Michi-
gan and the United States Constitutions. Plaintiff ar-
gues that the selection of logging industry employers
for beneficial liability limitations which are denied to
all other worker compensation employers is arbitrary.
In support of this position, plaintiff relies on the case of
*Manistee Bank & Trust Co v McGowan,* 394 Mich 655;
232 NW2d 636 (1975).
   "In evaluating constitutional challenges to socioeco-
nomic legislation on the basis of equal protection, both
the United States and Michigan Supreme Courts apply
the traditional 'rational relation' test. *Feldman v Dep't
of Social Services,* 84 Mich App 103, 106; 269 NW2d 319
(1978). In applying this standard the challenged statute
is presumed to be constitutional and the burden is

placed on the challenging party to show that the law has no reasonable basis. *Michigan State Employees Ass'n v Michigan Employment Security Comm,* 94 Mich App 677, 685; 290 NW2d 729 (1980).

"Plaintiff maintains that the stricter standard, which requires the legislative classification to possess a 'fair and substantial relation' to the object of the legislation should be applied in this case. That standard was set forth and applied in the case of *Manistee, supra,* which involved legislation requiring guest passengers to show gross negligence, while all others merely had to show negligence, in order to recover for loss or injury. The *Manistee* Court, p 671, stated that this test is used 'where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental'.

"The statutory amendments challenged in this case do not meet either of these situations. In this case the classification is not affirmatively drawn but results from the overall statutory scheme which results in a method of reimbursing an employer for all benefits paid to an injured employee in excess of $12,500.00. This classification does not limit the amount of compensation to which an injured employee is entitled nor is it more difficult or easier for an injured employee to collect. Also, the Fund cannot be considered 'no longer experimental'. *Manistee* involved the constitutionality of the state's 45-year-old guest passenger act. 1980 PA 357, which created the Fund, did not become effective until January 1, 1982.

"The test for determining the constitutionality of socioeconomic legislation is set forth in *Shavers v Attorney General,* 402 Mich 554, 612-613; 267 NW2d 72 (1978), which involves a constitutional challenge of the no-fault automobile insurance enactments on the basis of equal protection and due process. There the Court stated:

" 'The test to determine whether legislation enacted pursuant to the police power comports with due process is whether the legislation bears a reasonable relation to a permissible legislative objective.

" 'The test to determine whether a statute enacted

pursuant to the police power comports with equal protection is, essentially, the same. As the United States Supreme Court declared in *United States Dep't of Agriculture v Moreno,* 413 US 528, 533; 93 S Ct 2821; 37 L Ed 2d 782 (1973):

" ' "Under traditional equal protection analysis, a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest." ' (Citations omitted.)

"The Supreme Court in *Johnson v Harnischfeger Corp,* 414 Mich 102, 117; 323 NW2d 912 (1982), again addressed the equal protection and due process constitutional objections to legislative classifications with respect to § 361(2)(g) of the Act, and reaffirmed that the test stated in *Shavers, supra,* pp 612-613 was the proper standard to test socioeconomic legislation on equal protection and due process grounds.

"Under the traditional 'rational relation' test social or economic legislation will be upheld if it is supported by ' "any state of facts either known or which could reasonably be assumed' ". *O'Brien v Hazelet & Erdal,* 410 Mich 1, 17; 299 NW2d 336 (1980). When the facts are debatable, the legislative judgment must be accepted. *Johnson v Harnischfeger, supra,* p 114.

"This case is analogous to *Stottlemeyer v General Motors Corp,* 399 Mich 605; 250 NW2d 486 (1977). There an objection on the basis of equal protection and due process was raised and decided by the Supreme Court regarding the former Silicosis and Dust Disease Fund. (By amendment to Chapter 5 of the Worker's Disability Compensation Act, the logging industry fund was created and added to that fund.) In upholding the constitutionality of the former Silicosis and Dust Disease Fund, the Supreme Court stated:

" 'First we note that the fund and related tax on employers is for a valid public purpose. The *preservation of important segments of Michigan's industrial base* with the associated benefits to the state is a legitimate goal. This is especially true when the threat to these employers springs from statutory compensation requirements.' (Emphasis supplied.) *Stottlemeyer, supra,* p 614.

"Such is the situation in the instant case. The Fund was established to cushion the logging industry from potentially ruinous compensation rates. According to the affidavit of Ronald C. Hempsted, logging industry employers were subject to compensation rates which approximated half of the payroll of an individual business. The Fund which was created to shield the logging industry from these potentially ruinous compensation rates is rationally related to the legislative purpose in preserving the logging industry as a viable and competitive industry. The legislative classification creating the Fund is rationally related to a reasonable governmental interest. Therefore, the Fund does not offend the constitution on equal protection grounds.

### IV

"Plaintiff next contends that the apportionment and reimbursement provisions of Chapter 5, as amended, of the Act which requires all Michigan employers to contribute to the Fund are arbitrary and constitute a taking of property without due process. Plaintiff argues that the denial to all other Michigan employers of the right to be reimbursed from the fund for expenses incurred common to all violates Due Process Clauses of both the Michigan and the United States Constitutions.

"The test for reviewing socioeconomic legislation on equal protection and due process grounds is essentially the same. *Johnson v Harnischfeger, supra,* p 117.

"The assessment formula, created by the amendments to Chapter 5 of the Act, to which plaintiff objects, is a similar formula to that which is found under the former Silicosis and Dust Disease Fund. The Supreme Court in upholding the former Silicosis and Dust Disease Fund stated:

" 'Appellant has failed to establish that the Silicosis and Dust Disease Fund and its financing scheme are so arbitrary and unreasonable as to be an unconstitutional taking of money. *Because the fund has a valid purpose and is administered pursuant to rational distinctions and policy judgments, we conclude that there is no violation of * * * due process.'* (Emphasis supplied.) *Stottlemeyer, supra,* p 616.

"Plaintiff maintains that the legislative interest in protecting the logging industry from potentially ruinous compensation rates is not a valid public purpose. Plaintiff argues that in order for such a statute to be an exercise of a valid pupose it must assist the public.

"In *Stottlemeyer* the Supreme Court found the former Silicosis and Dust Disease Fund, which favored a specific industry, to be constitutional. The Fund, just as the former Silicosis and Dust Disease Fund, serves the purpose of preserving the economic and industrial base of the state 'when the threat to these employers springs from statutory compensation requirements', while still providing for workers' benefits. *Stottlemeyer, supra,* p 614. The logging industry is a viable and important segment of the state's industrial base and the creation of a statutory fund to preserve that industry is a permissible legislation action. The Fund, to which all Michigan employers are required to contribute, but which has the effect of shielding the logging industry from potentially ruinous compensation rates is rationally related to that legislative objective. As noted by the Supreme Court in *Stottlemeyer, supra,* pp 614-615, citing an early unemployment compensation case, *Carmichael v Southern Coal & Coke Co,* 301 US 495, 514-515; 57 S Ct 868; 81 L Ed 1245 (1937):

" ' *"the requirements of due process leave free scope for the exercise of a wide legislative discretion in determining what expenditures will serve the public interest.*

" ' " * * * The existence of local conditions which, because of their nature and extent, are of concern to the public as a whole, the modes of advancing the public interest by correcting them or avoiding their consequences, are peculiarly within the knowledge of the legislature, and to it, and not to the courts, is committed the duty and responsibility of making choice of the possible methods * * *. * * * *whether the present expenditure serves a public purpose is a practical question addressed to the law-making department, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court." '*

"It is concluded that Chapter 5 of the Act creating the

Fund does not violate the Due Process Clause of the Michigan or the United States Constitution.

"Based on the foregoing, plaintiff's motion for summary judgment pursuant to GCR 1963, 117.2(3) and the request for preliminary injunction are denied.

"An order may enter consistent with this opinion."

Affirmed.

No costs, a public question being involved.