Jack F. OBERLANDER, Plaintiff
and Appellee,

v.

Rebecca A. OBERLANDER,
Defendant and Appellant.

Civ. No. 890336.

Supreme Court of North Dakota.

Sept. 5, 1990.

Wayne T. Anderson (argued), Fargo, for
plaintiff and appellee.

Mertz Law Office, Fargo, for defendant and appellant; argued by Monty G. Mertz.

GIERKE, Justice.

Rebecca A. Oberlander appeals from a divorce judgment granting her and Jack F. Oberlander joint legal custody of their three children, but awarding Jack "the principal and primary physical custody of the children" subject to reasonable visitation by Rebecca. We reverse and remand with directions.

Jack and Rebecca were married on December 27, 1975. Three children were born of the marriage. At the time of trial, Aaron was 11, Melanie was 8, and Seth was 4. Jack is employed as service manager at Concord, Inc., and Rebecca is employed part-time as a registered nurse at St. Luke's Hospital. At the time of trial the couple resided in Fargo.

Custody of the children was the major issue in this relatively lengthy divorce trial. Jack presented evidence to establish that Rebecca would not be a suitable custodial parent because she suffered from a personality disorder manifested by frequent outbursts of violent behavior and prolonged "crying episodes." Rebecca presented evidence to establish that Jack would not be a suitable custodial parent because he was prone to violent tendencies and was physically and mentally abusive toward her.

Renae Reynolds, the court appointed guardian ad litem, recommended that the parties have joint physical custody of the children. Reynolds found both Jack and Rebecca to be "suitable parents for the children" and that both "appear to be able to provide for the children's needs and both have a strong, loving, affectionate relationship with the children." Reynold's recommendation also took into account the report of Neil I. Clark, a psychologist, who administered the Minnesota Multiphasic Personality Inventory [MMPI] test to Jack and Rebecca.

Clark reported that Rebecca's MMPI results showed "two elevated scales" indicating passive aggressive tendencies. According to Clark, "[p]ersons with this profile are often narcissistic, harboring much hos-tility and resentment." Clark also said people with this profile "tend to be histrionic" and that although "[s]uicidal gestures are quite common ... these gestures can be manipulative in nature." Clark testified, however, that passive aggressive tendencies in women are "rather common," and concluded that although Rebecca has "some personality adjustment problems," she also has "personality strengths" and her "mental status was normal." Clark found Rebecca to be a suitable parent. Clark's opinion was that Jack was also a suitable parent. According to Clark, Jack's MMPI results were "within normal limits" and Jack "is within the normal range of personality adjustment."

Clark tested Melanie and Aaron whom he found to be "well-adjusted" with high rankings in self-esteem. Clark found that Seth's behavior was "age appropriate" and that Seth appeared "to be attached and bonded to both of his parents."

Jack presented as an expert witness, Helen K. Wilson, a psychologist who conducted an evaluation of Jack and the children. Wilson testified that she performed an MMPI test on Jack, that Jack tested within normal limits in all categories, and that he has characteristics of being "passive" and working through problems in a "covert or indirect manner." Wilson found that Jack was "socially perceptive and peaceful with considerable tolerance." Wilson also found that Melanie and Aaron ranked high in self-esteem.

Although she did not personally interview Rebecca, Wilson commented on two MMPI tests previously performed on Rebecca by others. Wilson testified that the tests showed "a significant personality disorder" and an elevation in "the psychopathic deviate scale." Wilson testified that a person with Rebecca's MMPI results would have a tendency to act out aggressiveness in the family setting, would have abnormal relationships with men, and that Rebecca has a "personality disorder with a schizoid hysteric personality type." Wilson testified that it would not be in the best interests of the children to be in Rebecca's custody and recommended that Jack be giv-

en custody and control visitation with the children.

Rebecca attempted in her case-in-chief to present the testimony of Evonne Iola Domyahn as an expert witness in psychology. When Rebecca's counsel attempted to question Domyahn about her interpretation of Rebecca's MMPI results and whether Rebecca was "sufficiently stable" to be a suitable parent, Jack's counsel objected on the ground that Domyahn was not an expert in psychology. Although Domyahn is licensed as a psychologist in Minnesota, she is not licensed as a psychologist in North Dakota. The trial court sustained the objections and refused to qualify Domyahn as an expert witness, reasoning:

"She is not an expert—in my North Dakota court—psychologist. She does not hold—she is not a member of the American Psychological Association. She does not hold a North Dakota license. A Minnesota psychological license is not enough."

In its written findings, the trial court stated:

"8. Jack and the two oldest children have been evaluated by Helen K. Wilson, a psychologist. Rebecca and Jack have been evaluated by Neil I. Clark, a psychologist. The results of the evaluations indicate both parents are fit to be custodial parents except that Rebecca has personality adjustment problems which show up as hostility and resentment; narcissism; needing high levels of attention, affection and sympathy; acting out; suicidal gestures; blaming others; histrionic behavior; rationalization; and passive-aggressive behavior. Dr. Helen Wilson recommends the children be in the custody of Jack."

Rebecca asserts on appeal that the trial court erred in awarding Jack primary physical custody of the children and in not allowing Domyahn to testify as an expert witness in psychology. We conclude that the trial court's exclusion of Domyahn's testimony on the ground that she was not an expert because she was not licensed as a psychologist in North Dakota was an abuse of discretion, and that, because Domyahn's

excluded testimony related to the major issue in the case, the judgment awarding primary physical custody to Jack must be reversed.

It is well established that the qualifications of an expert witness are primarily for the determination of the trial court, and its determination will not be reversed unless it appears that there was an abuse of discretion. *Holecek v. Janke*, 171 N.W.2d 94, 103 (N.D.1969). However, this court will not hesitate to intervene when that discretion has been abused. *See Jamestown Plumbing & Heating Co. v. City of Jamestown*, 164 N.W.2d 355, 360 (N.D.1968).

■ Rule 702, N.D.R.Ev., which is identical to Rule 702, Fed.R.Ev., provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702 envisions a "most generous allowance of the use of expert witnesses" [*Stein v. Ohlhauser*, 211 N.W.2d 737, 743 (N.D. 1973) ], and "recognizes that it is the actual qualifications of the witness that count, rather than his title, by providing that an expert can be qualified by 'knowledge, skill, experience, training or education.'" 3 *Weinstein's Evidence* ¶ 702[04], at p. 702–51 (1988). *See also Collom v. Pierson*, 411 N.W.2d 92, 95–96 (N.D.1987). The rule does not require an expert to be licensed.

■ We agree with courts which have held under rules of evidence similar to our Rule 702 that to qualify as an expert, a witness need not be licensed in a given field, let alone licensed in the court's jurisdiction, so long as the witness possesses the requisite knowledge, skill, experience, training, or education in that field. *E.g., Beins v. United States*, 695 F.2d 591, 609 (D.C.Cir.1982); *Paradise Prairie Land Co. v. United States*, 212 F.2d 170, 173 (5th Cir.1954); *Lee Co. Electric Co-operative, Inc. v. Lowe*, 344 So.2d 308, 310 (Fla.Ct. App.1977); *Cornfeldt v. Tongen*, 262 N.W.2d 684, 697 (Minn.1977); *Wright v. Las Vegas Hacienda, Inc.*, 102 Nev. 261,

720 P.2d 696, 697 (1986); *Hake v. Manchester Township*, 98 N.J. 302, 486 A.2d 836, 838 (1985); *Watts v. Cumberland County Hosp. System, Inc.*, 75 N.C.App. 1, 330 S.E.2d 242, 252 (1985); *Breit v. St. Luke's Memorial Hosp.*, 49 Wash.App. 461, 743 P.2d 1254, 1257 (1987). The trial court's per se disqualification of Domyahn as an expert witness based on the lack of a North Dakota psychologist license was an abuse of discretion.

■ In addition to being a licensed psychologist in Minnesota, Domyahn testified that she holds a master's degree in child development and family relations and guidance and counseling. Domyahn testified that in order to obtain her license as a psychologist in Minnesota, she was required to pass the same examination that a Ph.D. psychologist must pass in order to obtain the same license. Domyahn holds a clinical status with the American Association of Family Therapy and a clinical membership with the Association for Marriage and Family Therapy, which required 2,000 hours of supervised marriage and family therapy beyond a master's level. She belongs to the National Council of Family Relations and the Minnesota Psychological Association. Domyahn has a total of 25 years experience in counseling. She has worked for Lutheran Social Services of North Dakota and Minnesota, and is currently the director of counseling for the northwest region of Lutheran Social Services of Minnesota. Domyahn has previously testified as an expert witness in Cass County three times. We conclude that Domyahn qualified as an expert witness in psychology in this case.

Jack's argument that Domyahn's testimony would have been merely cumulative to that of Reynolds and Clark is unpersuasive. In *Red River Commodities, Inc. v. Eidsness*, 459 N.W.2d 805 (N.D.1990), we recently said:

"In a trial without a jury, a court should not exclude evidence unless it is so hopelessly irrelevant or so clearly cumulative that it is a waste of time. In *Schuh v. Allery*, 210 N.W.2d 96, 99–100 (N.D.

1973) this court warned trial courts that, in bench trials, exclusion of potentially relevant evidence was not good procedure. In a nonjury trial, entry of incompetent evidence will rarely be reversible error while exclusion of competent evidence will cause reversal whenever justice requires."

Wilson's testimony about Rebecca's emotional stability and recommendation as to custody differed substantially from Clark's. Moreover, although the trial court found both parties "fit to be custodial parents," it is evident that the trial court placed significant emphasis in its findings on Wilson's testimony and recommendation regarding the pivotal issue of physical custody. Rebecca should have been allowed to rebut Wilson's testimony through her own expert witness.

■ Although Rebecca made no offer of proof, Jack concedes that the substance of the evidence sought to be introduced through Domyahn was apparent from the context within which the questions were asked. *See Wagner v. Peterson*, 430 N.W.2d 331, 332 (N.D.1988); Rule 103(a)(2), N.D.R.Ev. Domyahn began counseling Rebecca in May 1988, shortly after the parties separated. Rebecca attempted to present evidence through Domyahn that she was emotionally stable and a suitable parent worthy of physical custody of the children in an effort to rebut the damaging testimony given by Wilson, Jack's expert witness. We conclude that Rebecca's substantial rights were affected by the trial court's erroneous refusal to allow Domyahn to testify on her behalf as an expert witness, and that reversal is required. *See* Rule 103(a), N.D.R.Ev.

We reverse the judgment insofar as it awards Jack the "principal and primary physical custody of the children" and remand for a hearing to supplement the record at which Domyahn will be allowed to testify as an expert witness in psychology. The trial court is free to allow the parties to introduce additional evidence offered in response to Domyahn's testimony. In making its determination of primary physical custody, the trial court may also

consider any relevant evidence presented by the parties as to the circumstances existing since the trial court's original judgment was entered in this case.

ERICKSTAD, C.J., and MESCHKE and VANDE WALLE, JJ., concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of LEVINE, J., disqualified.

VERNON R. PEDERSON, Surrogate Judge, concurring specially.

I agree that significant admissible evidence was wrongfully excluded at the trial and that we should remand for additional testimony.

The majority opinion does not answer the concern expressed in the argument, and with which I agree, that the findings are clearly erroneous. Separate and special findings of fact required by Rule 52(a) NDRCivP should be neither recitations of the trial court's conclusions nor quotations from the testimony. Finding number 8, quoted in the majority opinion, is typical of the whole findings of fact in that it neither discloses the trial court's finding nor does it provide an understanding of the basis of the trial court determination.

I would have preferred that this court retain jurisdiction under Rule 35(b) NDRAAppP until it has seen new findings of fact after the additional testimony has been heard.