Richard T. WEBER, Plaintiff and Appellee,

v.

Colleen A. WEBER, Defendant and Appellant.

Civ. No. 930088.

Supreme Court of North Dakota.

March 11, 1994.

Thomas D. Fiebiger (argued), Anderson & Bailly, Fargo, for defendant and appellant.

Naomi H.L. Paasch (argued), Strehlow, Bryan and Paasch, Casselton, for plaintiff and appellee.

NEUMANN, Justice.

Colleen A. Weber appeals from a divorce judgment awarding custody of the parties' minor child to Richard T. Weber. We affirm.

Colleen and Richard were married on April 19, 1986, and separated in the fall of 1990. A son, Apollo, was born of this marriage on October 11, 1986. Richard initiated divorce proceedings in June of 1991. Ms. Maureen Holman was appointed Guardian

Ad Litem (GAL) for Apollo by interim order dated January 29, 1992. All issues were tried to the court on September 25, 28, and 29, 1992.

Both parties retained psychologists to conduct psychological evaluations, and to present testimony at trial. At trial, Dr. Neil Clark testified for Colleen, and Dr. Helen Wilson for Richard. Based on his examination of Colleen, Dr. Clark testified that Colleen was normally adjusted and therefore would be a suitable and competent parent. Dr. Clark did not meet with Richard or Apollo.

Based on a meeting with Richard and Apollo, and the administration of several tests, Dr. Wilson testified that Richard would be an appropriate and good custodial parent for Apollo, that Apollo was bonded with both parents, and that Richard would provide a good custodial home for the child. Although Dr. Wilson testified that she had never met Colleen, when asked on direct examination whether she had an opinion as to whether or not small children should be placed with the same sex parent, she responded:

"There's quite a bit of literature in that area that's coming out. And in terms of ideal situations actually a single mother and daughter are the best possible relationships in single parent homes. The father is important in cases of both girls and boys. Boys do better in general with their fathers than girls given that all of the things are equal. That is, if both parents are equally capable of parenting, if both parents love the child, the boy is still better off with the father. As a matter of fact this is why I insisted on doing some evaluation because I couldn't make that statement without knowing whether in this particular case the boy would be better off with the father. I assume the mother is perfectly able to parent the child."

Dr. Wilson also prepared a 3½ page report that was received into evidence over Colleen's objection on the grounds that it was hearsay, and that counsel had not had the chance to read the report. A portion of the report states:

"[Richard] is an excellent model for sex appropriate development. ... If the assumption could be made that the mother is equally capable of parenting Apollo, the data obtained in the area of child development become relevant in helping to made [sic] a decision in this case. This child is more likely to experience normal healthy development if placed in the primary custody of his father."

On cross-examination, Dr. Wilson was asked if in fact there were some ethical problems with her making a recommendation on custody when she had not met with both parents. Dr. Wilson responded that there was no ethical problem with her method and testimony.[1]

1. The exchange between Dr. Wilson and Colleen's counsel included the following:
"Q. On the last page of your report, page four, you also state I believe that 'Apollo seems to have strong attachment to both parents.'
"A. Yes.
"Q. The last two sentences however, Dr. Wilson, concern me. You state, 'This child is more likely to experience normal healthy development if placed in the primary custody of his father.'
"I'm wondering, Dr. Wilson, how you can make a statement such as that if you've never had an opportunity to interview the mother.
"A. I'm basing it on the assumption that both parents are equally capable of parenting, that I find nothing wrong with Colleen if I had interviewed her, had evaluated her. This is based more on the literature available in custody cases.
"Q. Okay. That's with all things being equal. But you haven't interviewed Ms. Weber, have you?

"A. No.
"Q. So you don't know that all things are equal, do you?
"A. Well, if I—
"Q. Do you, Dr. Wilson? Yes or no.
"A. If I gave him a 10 I'd expect to give—
"Q. Yes or no. Do you know that things are all equal?
"A. No.
"Q. In fact, Dr. Wilson, aren't there some ethical problems with your making a recommendation on custody when you haven't had an opportunity to meet with both parents?
"A. No. I'm basing this on the literature, and I am assuming that there are no problems with Colleen.
"Q. I guess what I'm getting at, Dr. Wilson, is as a psychologist are you ethically able to make a recommendation on custody without having interviewed both parents?
"A. Based on the literature, yes."

On December 16, 1992, the trial court issued its Findings of Fact, Conclusions of Law, and Order for Judgment, awarding Richard custody of Apollo. The trial court's findings of fact included the findings that:

"17. Dr. Neil Clark, a licensed psychologist, evaluated and tested the Defendant and testified that the Defendant is a suitable and competent parent. Dr. Clark did not meet or evaluate the Plaintiff or Apollo.

"18. Dr. Helen Wilson, a licensed psychologist, evaluated and tested the Plaintiff and Apollo. Dr. Wilson did not meet or evaluate the Defendant. She found Apollo to be a happy content child who is bonded with both parents. Dr. Wilson testified that the Plaintiff would be an appropriate and good parent for Apollo."

Additionally, findings were made addressing each of the best interest factors of NDCC § 14–09–06.2. Judgment of divorce was entered on December 23, 1992. Colleen's notice of appeal was filed on March 17, 1993.

Before the notice of appeal, Colleen's counsel filed a complaint with the North Dakota Board of Psychologist Examiners (Board) against Dr. Wilson. As a result, the Board entered into a stipulation with Dr. Wilson providing for a letter of reprimand for her testimony at the Weber divorce trial. The letter of reprimand was dated May 3, 1993.[2] On July 14, 1993, a majority of this court denied Colleen's motion for leave to make a motion to the trial court under Rules 59 and 60(b) of the North Dakota Rules of Civil Procedure.

On appeal, Colleen raises three issues:

"A. WHETHER THE COURT'S FINDING THAT THE BEST INTERESTS OF THE CHILD REQUIRED CUSTODY TO BE AWARDED TO PLAINTIFF WAS CLEARLY ERRONEOUS.

"B. WHETHER THE COURT'S CUSTODY DECISION WAS CLEARLY ERRONEOUS AND CONSTITUTED HARMFUL ERROR BY CONSIDERING AND RELYING UPON THE IMPROPER CUSTODY RECOMMENDATION OF DR. WILSON, WHO WAS FORMALLY REPRIMANDED BY THE STATE BOARD OF PSYCHOLOGIST EXAMINERS FOR SAID TESTIMONY.

"C. WHETHER THE TRIAL COURT'S ADMITTING DR. WILSON'S REPORT INTO EVIDENCE OVER DEFENDANT'S OBJECTION AND WITHOUT PROVIDING DEFENDANT AN OPPORTUNITY TO READ THE REPORT BEFORE CROSS EXAMINING DR. WILSON CONSTITUTED PREJUDICIAL ERROR."

We address each of these issues in order.

### A.

■ Trial court determinations of child custody are findings of fact. N.D.R.Civ.P. Rule 52(a); *e.g., Dschaak v. Dschaak,* 479 N.W.2d 484 (N.D.1992). Therefore, we will not disturb this trial court's determination of custody unless we find it to be clearly erroneous. N.D.R.Civ.P. Rule 52(a); *e.g., State ex rel. Younger v. Bryant,* 465 N.W.2d 155 (N.D.1991). Colleen, as the party asserting error, has the burden of demonstrating that

**2.** The relevant part of the letter of reprimand dated May 3, 1993, states:

"[T]he North Dakota State Board of Psychologist Examiners concluded that you have violated sections of the Ethical Principles of Psychologists and Code of Conduct promulgated by the American Psychological Association. Specifically, violations of the following sections were evident ...: Section 2.01(b), 2.05, 7.02 and 7.03:

"Of specific concern to the Board was the appearance that you confused the role of research consultant with that of clinical evaluator. You made several statements which indicated in your reports that you were not making specific custody recommendations, but then you made a direct statement which did consti-

tute a custody recommendation. It was further noted that research data cannot be assumed to apply universally to specific individual cases within a population. The Board was concerned that when conducting a clinical evaluation including a custody recommendation, all parties including both parents should have been evaluated. Any recommendations regarding custody of a child must include these data and cannot be based strictly on evaluation of one parent and reference to research data. ".... It appears that the errors you made were not the result of malevolent intention, but changes in your practice regarding custody evaluations should be made relative to the above concerns."

the trial court's child custody determination is erroneous. *Bryant,* 465 N.W.2d at 158. Determinations are erroneous when upon review of the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *E.g., id.*

■ Colleen argues that the trial court's findings regarding custody of Apollo are clearly erroneous. In addition to the contention that the trial court erroneously relied on the allegedly flawed recommendation of the GAL when determining the best interests of the parties' child, Colleen contends that the evidence does not support the court's finding that the best interests of Apollo required custody be awarded to Richard. We disagree.

■ The GAL's 31 page report was entered into evidence without objection by either party. Included in the report was a summary of the interviews conducted, and an assessment of each of the factors enumerated in NDCC § 14–09–06.2. Colleen's argument that the report was "flawed and erroneous" goes to the weight of the evidence and not its admissibility. *See Haus v. Haus,* 479 N.W.2d 474, 476 (N.D.1992) (appellant attacked weight to be given testimony of witnesses). In bench trials, the credibility of witnesses and the weight to be given their testimony are both exclusively functions of the trial court. *Schmidt v. Schmidt,* 325 N.W.2d 230, 233 (N.D.1982); N.D.R.Civ.P. Rule 52(a); *see also Johnson v. Johnson,* 480 N.W.2d 433, 437–38 (N.D.1992) (recognizing trial court's ability to ascertain the demeanor and credibility of expert witness).

■ The amount of weight and credibility the trial court ultimately decided to give Dr. Wilson's expert testimony is also a factual question, and the clearly erroneous standard of Rule 52(a) applies. *Stillwell v. Cincinnati Inc.,* 336 N.W.2d 618, 621 (N.D.1983); N.D.R.Civ.P. Rule 52(a). Trial courts are vested with substantial discretion in matters of custody and determinations of the best interests of children, so long as they consider and evaluate all factors that affect children's best interests and welfare as enumerated in § 14–09–06.2. *Haus,* 479 N.W.2d at 476. We are not persuaded that a mistake has

been made, and therefore determine that the trial court's findings of fact are not clearly erroneous.

We recognize and appreciate the difficult decision this trial court made when faced with the job of choosing between two fit parents. Both parties have attempted to provide Apollo with a good home. The trial court, as evidenced by the record, did not conclude that Colleen was not a good parent; rather, the court found that the award of custody to Richard was in Apollo's best interest. *See* NDCC § 14–09–06.2. Children are fortunate when trial courts have the luxury of choosing between two fit parents for their care and custody. We refuse to retry this case by substituting our judgment for that of the trial court. *Haus,* 479 N.W.2d at 476. There is sufficient evidence in the record to support the trial court's custody determination. *See* N.D.R.Civ.P. Rule 52(a).

### B.

■ Colleen argues that the trial court erred in considering the recommendation of Richard's expert, Dr. Helen Wilson. She contends that the trial court should not have relied on the report and testimony of Dr. Wilson because, approximately eight months after trial, Dr. Wilson was reprimanded by the Board for violation of sections 2.01(b), 2.05, 7.02, and 7.03 of its code of ethics in relation to her testimony in the Weber divorce trial.

We agree with Colleen that, in the absence of a complete study of all of the parties, there is logical frailty in applying a general premise to a specific case. *See* 1 *McCormick on Evidence* § 206 pp. 923–29 (4th ed. 1992) (expert testimony of profile evidence). However, although the disciplinary action against Dr. Wilson by the Board is part of the record on appeal, it was not a part of the record before the trial court. We will not fault the trial court's findings for failing to consider a disciplinary action which was not before it.

It is clear to us that even without the benefit of the Board's reprimand, the logical flaw in Dr. Wilson's report was perfectly apparent to the trial court. Although Colleen neither requested a continuance in order to better establish the perceived impropriety

of Dr. Wilson's testimony and report, nor did she call a rebuttal witness for the purpose of impeachment, Colleen did utilize cross-examination of Dr. Wilson to point out possible flaws and weaknesses in the conclusion contained in her report.

The frailty of Dr. Wilson's testimony goes to the weight to be accorded the opinion, and not its admissibility. Not only are trial courts given broad discretion in determining the amount of weight to give testimony, *Johnson,* 480 N.W.2d at 437–38, but it is apparent from the trial court's findings of fact that no appreciable weight was given to Dr. Wilson's statement. *Compare with Oberlander v. Oberlander,* 460 N.W.2d 400, 403 (N.D.1990) (trial court placed significant emphasis in its findings on expert's testimony and recommendation). Not only did the trial court make specific findings of fact that neither of the psychologists saw both parents, but conspicuously absent from the findings is any reference to the portion of Dr. Wilson's report for which she was later reprimanded.

The final point we address as part of this issue is the propriety of appeal. An appeal directly to this Court is not the most appropriate means to deal with this issue of newly discovered evidence. We recently addressed this same issue in the case of *Johnson v. Schlotman,* 502 N.W.2d 831 (N.D. 1993), where the testifying psychologist was later reprimanded by the Board for his work at trial. In *Johnson,* we stated that "a motion for a new trial based upon the discovery of new evidence in custody and visitation cases is inappropriate because the continuing jurisdiction of the trial court in custody matters allows for a modification hearing when new evidence is adduced." *Id.* at 836. The same reasoning is applicable in this case.

### C.

The final issue on appeal is whether the trial court erred in admitting Dr. Wilson's report into evidence. Colleen's objection at trial to the admission of the report was based on hearsay grounds, and the fact that counsel had not "had a chance to read it." Our review is limited to whether the trial court abused its discretion in admitting this evidence. *Williams County Social Services Bd.*

*v. Falcon,* 367 N.W.2d 170, 177 (N.D.1985). We conclude that it did not.

First, Colleen argues the trial court abused its discretion when it overruled the hearsay objection to the introduction of the report into evidence. Regardless of whether or not the report is inadmissible hearsay, in bench trials it is generally not reversible error to admit incompetent evidence unless it induced an improper finding. *E.g., In re M.M.S.,* 449 N.W.2d 574, 577 (N.D.1989) ("Receipt of incompetent evidence in a nonjury trial is not error unless it adversely affects the decision."). "In a nonjury trial, entry of incompetent evidence will rarely be reversible error while exclusion of competent evidence will cause reversal whenever justice requires." *Oberlander,* 460 N.W.2d at 403 (quoting *Red River Commodities, Inc. v. Eidsness,* 459 N.W.2d 805 (N.D.1990)). The trial court's findings do not reflect any reliance on Dr. Wilson's report. With the exception of her final custody recommendation, the report is little more than a summary of Dr. Wilson's testimony at trial. Even without the report, the record contains sufficient evidence to support the trial court's findings.

Second, Colleen argues that the trial court abused its discretion when it "summarily overruled the objection without providing counsel an opportunity to review the document prior to the direct or cross examination of Dr. Wilson." Reviewing the transcript, it is apparent that not only was no request made to recess in order to review the report, but there is no evidence to suggest Colleen even attempted to discover this evidence before trial. *See* N.D.R.Civ.P. Rule 26(b)(4) (trial preparation—experts). Had Colleen attempted to discover this evidence prior to trial, she would have been in a better position to object. Having failed to do so, the fact that the report was dated five days before being offered into evidence at trial is immaterial. The trial court did not abuse its discretion in overruling Colleen's objection.

For the above-stated reasons, we affirm.

VANDE WALLE, C.J., and SANDSTROM and MESCHKE, JJ., concur.

LEVINE, Justice, concurring in the result.

I expect that lawyers practicing family law in this state will be lining up to retain Dr. Wilson in child custody cases. Her position that, in the case of equally fit parents, father should be given custody of the boys, and, I think, mother, the girls, has the beneficial potential for doing what, in general, needs to be done in domestic-relations litigation, namely, injecting predictability into custody decisions and removing coerciveness from settlement negotiations. However, it does greater mischief. First, "the data do not provide a sufficient basis for adopting a legal preference for same-sex custody." Linda Whobrey Rohman et al., *The Best Interests of the Child in Custody Disputes, in* Psychology and Child Custody Determinations 59, 68 (Lois A. Weithorn ed., 1987) [hereinafter *The Best Interests of the Child*]. Second, a same-sex preference substitutes one sex-biased rule for another, the tender years doctrine, which the law has abandoned. We ought not subscribe to sex-based rules that are themselves based on sexual stereotypes. *But see Moran v. Moran*, 200 N.W.2d 263, 269 (N.D.1972) ["Undoubtedly, the court recognizes that as the boys near puberty they will more likely be dependent upon the guidance and discipline of a father rather than a mother."].

Data suggest that the custody of young children of either sex should be awarded to the parent who has functioned as their primary caretaker. *The Best Interests of the Child, supra* at 67, 92. I, too, have embraced the idea that the primary caretaker should break the tie between equally fit parents. *See, e.g., Gravning v. Gravning*, 389 N.W.2d 621, 624–25 (N.D.1986) (Levine, J., dissenting). However, I continue to lose that battle. *See, e.g., Dinius v. Dinius*, 448 N.W.2d 210 (N.D.1989). Giving the primary caretaker the custodial advantage is based upon the psychological phenomenon of bonding. It is gender neutral, at least in theory, given the fact that either parent may fulfill the role of primary caretaker. Apparently, Dr. Wilson's opinion is that biology is conclusive.

However unpersuaded I and others are by the merits of Dr. Wilson's biological determinism, I am wholly persuaded that the trial court did not base its decision on Dr. Wilson's opinion. While it would have been preferable to remand this case when requested to do so by the appellant, so that the trial judge could have expressly informed us (and reassured me) that she gave the expert opinion the little weight it deserved, I am comfortable with the trial court's findings of fact in this case. In fact, the trial judge did not find these parents equally fit, making Dr. Wilson's opinion on biological determinism irrelevant.

Even if there were data that did suggest a particular general trend, individual cases must be evaluated clinically to determine the applicability of general findings. *See The Best Interests of the Child, supra* at 84. I find equally troubling the penchant, in the name of "statistical probability," to blithely slide from the general to the particular without evidence that would either support the general premise or fill in the gap between the general and the so-called "scientific" conclusion or opinion. Here, we do not know what statistical data underlay "the literature" that Dr. Wilson relied on. In *Branson v. Branson*, 411 N.W.2d 395, 400 (N.D.1987), the expert based his custody recommendation on the data that "there is a statistical probability that there could be" a problem someday in the bond between the child and the parent who had been a victim of child abuse. There was, of course, no evidence of a bonding problem in the case or evidence of the "statistical probability" of the major premise. The *Branson* majority exerted significant energy in minimizing the prejudice resulting from that fallacious and improper expert opinion.

Psychologists testifying in legal proceedings should be advised by counsel and the court to restrict their opinions to matters about which they have requisite knowledge. A psychologist can assist the factfinder by providing it with thorough information. But an expert witness retained by one side must resist the temptation to become a biased advocate rather than an objective expert whose role is to assist the factfinder. As one expert puts it:

"In the determination of appropriate custody, the psychologist is often put into a role

of evaluating a child in an adversary situation. In this role the psychologist may be requested to only have contact with one of the parents, thus the position of rendering an opinion as to the award of custody to the parent not employing the psychologist has to be suspect." Douglas Knowlton, *Psychology Evaluations of Children: Their Place in the Courtroom*, 66 N.D.L.Rev. 673, 676 (1990) (footnote omitted).

Dr. Knowlton cautions that "[p]sychologists should be aware of the impact of their own values" on the opinions they offer and should not exceed their proper function by giving an opinion about the fitness of a parent when the psychologist has had no contact with that parent. *Id.* "[W]hen attorneys or judges ask the psychologist to provide more information than obtained and push for opinions not directly based on the data available, the appropriateness of the testimony clearly needs to be questioned." *Id.* at 685. Here, the specter of impropriety has the appearance of contaminating the trial. That is unfortunate because there is abundant unobjectionable evidence which amply supports the trial court's findings.

I therefore concur in the result.

SANDSTROM, Justice, concurring.

I agree with the opinion of the Court. I write separately to note that the North Dakota State Board of Psychologist Examiners apparently applied a code of ethics never legally adopted for use in North Dakota. The Board apparently used the most recent code issued by the American Psychological Association. That version has not been adopted for regulatory use in this state.

N.D.C.C. § 43–32–27(7) has not been amended since its enactment in 1967. The relevant portion of that statute provides the Board may discipline licensed psychologists who engage "in any form of unethical conduct as defined in 'Ethical Standards for Psychologists' as adopted and published by the American psychological association, 1953, and as revised." The Board adopted a corresponding administrative rule sometime prior to July 1, 1978, the date the North Dakota Administrative Code came into existence.

*See* N.D.C.C. § 43–32–08. That rule is presently found at NDAC § 66–02–01–07.

The American Psychological Association (APA) code of ethics, in addition to the current version, has been revised or amended at least seven times since the enactment of § 43–32–27(7). *See Ethical Principles of Psychologists and Code of Conduct*, American Psychologist, Dec. 1992. The APA has published its Ethical Standards as follows:

"American Psychological Association. (1953). *Ethical standards of psychologists*, Washington, DC: Author.

American Psychological Association. (1958). Standards of ethical behavior for psychologists. *American Psychologist*, 13, 268–271.

American Psychological Association. (1963). Ethical standards of psychologists. *American Psychologist*, 18, 56–60.

American Psychological Association. (1968). Ethical standards of psychologists. *American Psychologist*, 23, 357–361.

American Psychological Association. (1977, March). Ethical standards of psychologists. *APA Monitor*, pp. 22–23.

American Psychological Association. (1979). *Ethical standards of psychologists*. Washington, DC: Author.

American Psychological Association. (1981), Ethical principles of psychologists. *American Psychologist*, 36, 633–638.

American Psychological Association. (1990). Ethical principles of psychologists (Amended June 2, 1989). *American Psychologist*, 45, 390–395."

*Id.* The version of the APA code of ethics which the Board sought to apply to Dr. Wilson is significantly different from the one in effect in 1967, the year the statute was enacted, and the one in effect in 1978, prior to the enactment of the Administrative Code. The Administrative Code does not reflect that the Board has ever adopted any of these more recent versions.

The Board may not use a version of the APA's code that has never been legally

adopted in North Dakota. *See State v. Julson*, 202 N.W.2d 145, 150–51 (N.D.1972) (citing *Schryver v. Schirmer*, 84 S.D. 352, 171 N.W.2d 634, 636–37 (1969) ("Statutes adopting laws or regulations of other states, the ·federal government, or any of its agencies, effective at the time of adoption are valid, but attempted adoption of future laws, rules or regulations of other states, or of the federal government, or of its commissions and agencies generally have been held unconstitutional as an unlawful delegation of legislative power.")). *See also Comerica Bank–Detroit v. Dept. of Treasury*, 194 Mich.App. 77, 486 N.W.2d 338, 346 n. 4 (1992) ("It has been held that an act which adopts by reference the whole or a portion of another statute or code incorporates the standard as it existed at the time of the adoption, and does not include subsequent modifications, amendments, or variations to the adopted statute or code. But, the adoption by reference of future legislation and rules are unconstitution-al." (quoting *Michigan Mfrs. Ass'n v. Director, Workers' Disability Comp. Bureau*, 134 Mich.App. 723, 352 N.W.2d 712, 715 (1984)).

The Board may not adopt or use for regulatory purposes a version of the ethical standards, unless the Board complies with N.D.C.C. ch. 28–32 in specifically adopting that version. *See Little v. Spaeth*, 394 N.W.2d 700, 703 (N.D.1986); *Hakanson v. Dept. of Human Services*, 479 N.W.2d 809, 813 n. 7 (N.D.1992).

VANDE WALLE, C.J., concurs.