AFT MICHIGAN v STATE OF MICHIGAN

JOHNSON v PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM

McMILLAN v PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM

Docket Nos. 303702, 303704, and 303706. Submitted October 5, 2011, at Lansing. Decided August 16, 2012, at 9:00 a.m. Leave to appeal sought.

AFT Michigan, the Henry Ford Community College Adjunct Faculty Organization, and numerous other labor organizations that represent public school employees brought an action in the Court of Claims against the state of Michigan, seeking to enjoin further withholding by the employers, pursuant to MCL 38.1343e, of a percentage of the employees' wages and the remittance of that amount to the Michigan Public School Employees Retirement System (MPSERS) as "employer contributions" to the trust that funds retiree health-care benefits. Plaintiffs also sought a declaratory ruling that the statute is unconstitutional and to have the employees' withheld wages returned to them with interest. Timothy L. Johnson and three other public school employees also brought a similar action in the Court of Claims against the Public School Employees Retirement System and others, seeking similar relief. Deborah McMillan and four other public school employees likewise brought a similar action in the Court of Claims against the Public School Employees Retirement System and others, seeking similar relief. The Court of Claims, Clinton Canady, III, J., ordered in all three cases that the withheld wages be placed in an interest-bearing account, rather than the MPSERS trusts, and that they be maintained there until the legal challenge was resolved. The court then granted summary disposition in favor of the organizational plaintiffs in the first action and partial summary disposition in favor of plaintiffs and partial summary disposition in favor of defendants in both the second and third actions. The court also rejected defendants' motion to dismiss the labor organizations, holding that they had standing to challenge the statute, and rejected defendants' assertion that the claims were not ripe for review. The court held that the statute violated plaintiffs' rights under both the Taking Clauses and the Due Process Clauses of the United States and Michigan Constitutions but did not violate the constitutional provisions barring the

impairment of contracts by the state. The court also dismissed plaintiffs' common-law breach of contract claim. The state of Michigan appealed with regard to the first action (Docket No. 303702). The Public School Employees Retirement System and some of the other defendants in the other two actions appealed in the other actions, and the plaintiffs in those actions cross-appealed (Docket Nos. 303704 and 303706). The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

MCL 38.1343e violates the federal and state constitutional protections against the impairment of contracts by the state and the taking of private property by the government without just compensation. The statute also violates the constitutional guarantee of substantive due process of law. The prohibition against governmental impairment of contracts was violated because the statute requires that school employees be paid less than the amount they and their employers had freely agreed on in contracts. The prohibition against the taking of private property without just compensation was violated because the statute directs that unique and definable monies in which plaintiff employees have a property interest be confiscated by their governmental employers and used to pay the statutorily mandated employers' contribution to a state fund and did not merely create a general obligation on the part of active employees to pay a certain sum. While the fund in question funds health-care benefits for present retirees, the active employees whose wages were taken have no vested right themselves to the receipt of health-care benefits upon their own retirement. The orders of the Court of Claims granting summary disposition or partial summary disposition in favor of plaintiffs in each case were affirmed, the stay ordered by the Court of Appeals on March 18, 2011, was terminated, and the cases were remanded to the Court of Claims for further proceedings.

1. Defendants failed to demonstrate that they were entitled to a judgment as a matter of law with regard to their claim that plaintiff labor organizations did not have standing to bring their action.

2. Plaintiffs' complaints that defendants' confiscation of a percentage of their compensation in order to pay for the health care of others violated constitutional protections and contract rights did not concern hypothetical events and were ripe for decision.

3. Requiring the present plaintiff employees to acquiesce to the wage confiscation as a condition of continued employment did not violate the prohibition against the impairment of accrued financial

benefits (plaintiff employees' pensions) contained in Const 1963, art 9, § 24. The prospective increases in their pensions that employees who refused to acquiesce in the confiscation and, therefore, lost their employment would have earned during their continued employment, are not already accrued financial benefits.

4. MCL 38.1343e operates as a substantial impairment of the employment contracts between plaintiffs and the employing educational entities. Because governmental entities were parties to the employment contracts and benefited from the impairment of the contracts, heightened scrutiny must be employed in reviewing the statute. Although courts have found statutes impairing contractual obligations to be reasonable and necessary when the impairment was the consequence of remedial legislation intended to correct systemic imbalances in the marketplace, the present case did not involve corrections to the marketplace to assure free competition. Although it has been held that a modest, temporary impairment of governmental contracts may be imposed as a matter of last resort to address a fiscal emergency, such circumstances must be extraordinary and the degree of the impairment with regard to its amount and its duration is central to the question whether the impairment passes constitutional muster. MCL 38.1343e works a severe, permanent, and immediate change in contractual relationships. The statute imposed a permanent impairment on the most fundamental aspect of employment contracts and did so not to deal with a short-term crisis, but as a long-term mechanism to restructure retirement benefit funding. The state failed to show that it first undertook to reduce retiree health-care benefits, or to require present retirees to contribute to their own health-care plans, or to restructure the benefits system in any way other than to legislate state-imposed modifications of freely negotiated contracts. The state failed to show that the particular impairment was necessary to the public good. MCL 38.1343e violates the prohibition against the impairment of contracts contained in US Const, art I, § 10 and Const 1963, art 1, § 10.

5. Plaintiff employees' wages are specific funds in which they unquestionably had a property interest. The government's taking of those wages was action that constituted a "taking" for purposes of the Taking Clauses of the United States and Michigan Constitutions. When the government did not merely impose an assessment or require payment of an amount of money without consideration, but instead asserted ownership of a specific and identifiable parcel of money, the Taking Clauses were implicated. Because MCL 38.1343e takes private property without providing

any form of compensation, the Court of Claims correctly ruled that the statute violated the Taking Clause of US Const, Am V and Const 1963, art 10, § 2.

6. The Court of Claims properly concluded that MCL 38.1343e is unconstitutional under the Due Process Clauses of US Const, Am XIV and Const 1963, art 1, § 17. The mandatory contributions imposed on current public school employees did not go to fund their own retirement benefits but, instead, to pay for retiree health care for already-retired public school employees. It does not comport with due process to require present school employees to transfer a percentage of their incomes in order to fund the retirement benefits of others. The statute did not provide that the monies obtained by the involuntary collection of a percentage of the workers' wages would be used to fund the retiree health-care benefits of those whose wages were being taken. MCL 38.1343e, which provides that the government confiscate the income of one discrete group in order to fund a specific governmental obligation to another discrete group, is unreasonable, arbitrary, and capricious and violates the Due Process Clauses.

Affirmed and remanded.

SAAD, J., concurring in part and dissenting in part, concurred with the conclusions of the majority that plaintiff labor organizations have standing to pursue this action and that plaintiffs' claims are ripe for judicial review. He also agreed that MCL 38.1343e does not impair or diminish accrued financial benefits of a pension plan in violation of Const 1963, art 9, § 24, because benefits earned after July 1, 2010, had not yet accrued when the statute was enacted. He disagreed with the holding that MCL 38.1343e violates the Contracts Clauses, US Const, art I, § 10 and Const 1963, art 1, § 10, the Taking Clauses of US Const, Am V and Const 1963, art 10, § 2, and the Due Process Clauses of US Const, Am XIV and Const 1963, art 1, § 17. The challenged public policy in these appeals did not even touch upon, much less impair, contracts and no property is taken by the state in the sense contemplated by US Const, Am V. Substantive due process is not a catch-all for failed constitutional claims. The Court of Appeals should have upheld MCL 38.1343e as constitutional. The Supreme Court has ruled that the Legislature created and may revoke retiree health-care benefits and that such benefits are neither a constitutionally protected contract right nor a vested right under the state Constitution. MCL 38.1343e has not operated as a substantial impairment of a contractual relationship because it does not affect, much less impair, any contract. To constitute an impairment of contract, there must first be a contract that is impaired. For plaintiffs to

state a claim, MCL 38.1343e must have altered either a contract between the state itself and the public school employees or the public school employees' contracts with some third party. MCL 38.1343e does neither. This claim must fail because no contract has been impaired. The public school employees had no contract with the state for retiree health-care benefits, nor did the public school employees have vested rights in retiree health-care benefits. The collective-bargaining agreements between the public school employees and various school districts were not even touched, much less impaired. The plaintiffs in Docket No. 303704 failed to allege that any collective-bargaining agreements existed or that such agreements formed the basis of the breach of contract count and they did not attach any contracts to their complaint. The state was not a party to the collective-bargaining agreements and could not be bound by them. In addition, the collective-bargaining agreements did not address the retiree health-care system because this is a benefit created by the state. The state's statutory mandate that public school employees contribute money to help defray the cost of retiree health-care benefits was between the state and each worker, and this had nothing to do with any contract. Regardless of the wage levels negotiated in collective-bargaining agreements, those levels were not affected. MCL 38.1343e sets forth a mechanism to ensure that each member of MPSERS make this contribution by requiring school districts to deduct the contribution from the member's pay and submit it to the retiree health-care system. That the state chose a paycheck deduction method simply did not convert a permissible legislatively mandated contribution into an unconstitutional impairment of contract. This case concerned the state's demands or financial assessment upon each public school employee and had nothing to do with any contract between each employee and the state or a third party. MCL 38.1343e does not effectuate a taking of private property for which the government must give just compensation. No caselaw holds that a "taking" occurs when the Legislature requires a public school employee to contribute money as a condition for receiving benefits in a state-created retirement health-care program, designed for the benefit of the employee. The declaratory ruling invalidating MCL 38.1343e was not an award of just compensation for a taking effectuated by an otherwise proper governmental action. The relief requested and granted in these cases was not that contemplated under the Taking Clauses, and the lower court's rulings should have been reversed. The majority's application of the Taking Clauses is legally unsupportable because requiring a monetary contribution to a retiree health-care plan did not trigger application of the clauses since no constitutionally

protected property interest was invaded. The percentage deductions from plaintiff employee's compensation were not physical appropriations of property. In limited situations, a specific fund of money may be considered property for Taking Clause purposes; however, no such fund exists here. Because the underlying allegations were that MCL 38.1343e operates to extract a percentage of plaintiff employees' compensation, the claims fell within the explicit sources of protection provided by the Taking or Contracts Clauses and resort to the generalized notion of substantive due process was thus improper. The trial court plainly erred by granting summary disposition to plaintiffs on the substantive due process claims.

1. CONSTITUTIONAL LAW — TAKING CLAUSE — CONTRACTS CLAUSE — DUE PROCESS — PUBLIC SCHOOL EMPLOYEES — RETIREE HEALTH-CARE BENEFITS.

MCL 38.1343e, which requires that public school districts and other reporting units withhold three percent of each employees' wages and remit the amount to the Michigan Public School Employees Retirement System as employer contributions to the trust that funds retiree health-care benefits, violates the constitutional protections against the impairment of contracts by the state, the taking of private property by the government without just compensation, and substantive due process (US Const, art I, § 10; US Const, Ams V and XIV; Const 1963, art 1, § 10; Const 1963, art 1, § 17; Const 1963, art 10, § 2).

2. CONSTITUTIONAL LAW — CONTRACTS CLAUSE — IMPAIRMENT OF CONTRACTS BY GOVERNMENT.

Courts determine whether a governmental impairment of a contract violates the Contract Clause by determining whether the government has shown that it did not consider impairing the contract on par with other policy alternatives, impose a drastic impairment when an evident and more moderate course would serve its purpose equally well, or act unreasonably in light of the surrounding circumstances; the courts generally are to determine whether the particular impairment is necessary to the public good (US Const, art I, § 10; Const 1963, art 1, § 10).

3. CONSTITUTIONAL LAW — CONTRACTS CLAUSE — IMPAIRMENT OF CONTRACTS BY GOVERNMENT.

Modest, temporary impairments of governmental contracts may be imposed as a matter of last resort to address a fiscal emergency; the circumstances must be extraordinary and the degree of the impairment with regard to its amount and its duration are central

questions to be answered in determining whether the impairment passes constitutional muster (US Const, art I, § 10; Const 1963, art 1, § 10).

4. CONSTITUTIONAL LAW — TAKING CLAUSE — MONEY.

A Fifth Amendment taking occurs, requiring the government to pay just compensation, when the government directly seizes property in which a person has a property interest; a violation per se of the Taking Clause occurs when the government does not merely impose an assessment or require payment of an amount of money without consideration but instead asserts ownership of a specific and identifiable parcel of money (US Const, Am V; Const 1963, art 10, § 2).

*Mark H. Cousens* for AFT Michigan and others.

*Miller Cohen, P.L.C.* (by *Bruce A. Miller* and *Keith D. Flynn*), for Timothy L. Johnson and others.

*White, Schneider, Young & Chiodini, P.C.* (by *James A. White, Kathleen Corkin Boyle*, and *Timothy J. Dlugos*), and *Arthur R. Przybylowicz*, for Deborah McMillan and others.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Frank J. Monticello* and *Larry F. Brya*, Assistant Attorneys General, for the state of Michigan, the Public School Employees Retirement System, the Public School Employees Retirement Board, the Department of Technology, Management, and Budget, and others.

Before: SHAPIRO, P.J., and SAAD and BECKERING, JJ.

SHAPIRO, P.J. In these three cases consolidated for appeal, plaintiff public school employees and their representative organizations raise various constitutional challenges to MCL 38.1343e. This provision was adopted in 2010 and amended article 3 of the Public

School Employees Retirement Act, MCL 38.1341 *et seq.*, which governs the Michigan Public School Employees Retirement System (MPSERS), MCL 38.1321. MCL 38.1343e requires that public school districts and other reporting units[1] withhold three percent of each employee's wages and remit the amount to the MPSERS as "employer contributions" to the trust that funds retiree health care benefits.

We conclude that MCL 38.1343e violates multiple constitutional rights set forth in both the United States and Michigan Constitutions and is therefore invalid. Specifically, we conclude that the statute violates federal and state constitutional protections against the impairment of contracts by the state and the taking of private property by the government without compensation, as well as the constitutional guarantee of substantive due process. The prohibition against governmental impairment of contracts is violated because the statute requires that school employees be paid three percent[2] less than the amount they and their employers freely agreed on in contracts. The prohibition against the taking of private property is violated because MCL 38.1343e does not merely create a general obligation on the part of active employees to pay a certain sum, but instead directs that unique and definable monies in which plaintiff employees have a property interest be confiscated by their governmental employers. Moreover, the confiscated wages are then used to pay the

---

[1] These include intermediate school districts, public school academies, tax-supported community or junior colleges and universities and any agency having employees on its payroll who are members of the retirement system.

[2] The statute required any public school employee whose salary is less than $18,000 to contribute 1.5 percent for the fiscal year starting July 1, 2010. MCL 38.1343e. Beginning July 1, 2011, all employees were required to contribute the full three percent. *Id.*

statutorily mandated *employers'* contributions to a
state fund. Finally, while the fund in question funds
health care benefits for present retirees, the active
employees whose wages are taken have no vested right
themselves to the receipt of health care benefits upon
their own retirement.

## I. BACKGROUND

MCL 38.1343e became effective in 2010 and reads as
follows:

> (1) Except as otherwise provided in this section, begin-
> ning July 1, 2010, each member shall contribute 3% of the
> member's compensation to the appropriate funding ac-
> count established under the public employee retirement
> health care funding act [MCL 38.2731 *et seq.*]. For the
> school fiscal year that begins July 1, 2010, members who
> were employed by a reporting unit [i.e., school district] and
> were paid less than $18,000.00 in the prior school fiscal
> year and members who were hired on or after July 1, 2010
> with a starting salary less than $18,000.00 shall contribute
> 1.5% of the member's compensation to the appropriate
> funding account established under the public employee
> retirement health care funding act. For each school fiscal
> year that begins on or after July 1, 2011, members whose
> yearly salary is less than $18,000.00 shall contribute 3% of
> the member's compensation to the appropriate funding
> account established under the public employee retirement
> health care funding act. The member contributions shall be
> deducted by the employer and remitted as employer con-
> tributions in a manner that the retirement system shall
> determine.
>
> (2) As used in this act, "funding account" means the
> appropriate irrevocable trust created in the public em-
> ployee retirement health care funding act for the deposit of
> funds and the payment of retirement health care benefits.

A provision of 2010 PA 77, codified as MCL 38.2733(6),
provides in pertinent part: "This act shall not be

construed to define or otherwise assure, deny, diminish, increase, or grant any right or privilege to health care benefits or other postemployment benefits to any person . . . ." Accordingly, MCL 38.1343e cannot be read to grant any "right or privilege" to retiree health care benefits beyond that already in place. And as determined by the Michigan Supreme Court in *Studier v Michigan Pub Sch Employees' Retirement Bd*, 472 Mich 642; 698 NW2d 350 (2005), school employee retiree health care benefits are not guaranteed by contract and do not constitute an accrued benefit protected from impairment or elimination by Const 1963, art 9, § 24.[3]

After the effective date of MCL 38.1343e, school districts began to withhold three percent of their employees' wages for remittance as employer contributions to the MPSERS. Plaintiffs brought suits in the Court of Claims to enjoin further withholding, to obtain a declaratory ruling that the statute was unconstitutional, and to have the withheld wages returned to them with statutory interest. The court ordered that the withheld wages be placed in an interest-bearing account, rather than the MPSERS trusts, and that they be maintained there until the legal challenge was resolved. The court later granted summary disposition or partial summary disposition in favor of plaintiffs in each of the three cases, two of which were brought by individual school employees and one by an array of labor organizations representing school employees.

The court rejected defendants' motion to dismiss the labor organizations as plaintiffs, holding that they had

---

[3] This provision of the Michigan Constitution provides, in part, that "accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby."

standing to challenge the statute. It also rejected defendants' assertion that the claims were not ripe for review.

With regard to the substance of the constitutional challenges, the court held that the statute violated plaintiffs' rights under both the Takings Clauses and the Due Process Clauses of the federal and state Constitutions. The trial court held that the statute did not violate the constitutional provisions barring the impairment of contracts by the state and also dismissed a common-law breach of contract claim.

## II. STANDING

Defendants argue that the plaintiff labor organizations in Docket No. 303702 do not have standing to bring suit. Whether a party has standing is a question of law that this Court reviews de novo. *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 527; 695 NW2d 508 (2004). In reviewing a motion under MCR 2.116(C)(5), this Court considers the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties to determine whether the moving party was entitled to judgment as a matter of law. MCR 2.116(G)(5); *Kuhn v Secretary of State*, 228 Mich App 319, 332-333; 579 NW2d 101 (1998).

"It is not disputed that, under Michigan law, an organization has standing to advocate for the interests of its members if the members themselves have a sufficient interest." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 373 n 21; 792 NW2d 686 (2010). Defendants concede that if the organizational plaintiffs represent public school employees, then they have standing. The organizational plaintiffs assert that they represent public school employees. Defendants com-

plain that these plaintiffs have not produced evidence of their memberships. However, defendants do not provide any evidence to the contrary and it is plain that these plaintiffs represent public school employees. They have names such as "AFT Michigan" (American Federation of Teachers – Michigan) "Dearborn Federation of School Employees," and "Detroit Association of Educational Office Employees." Certainly defendants have not demonstrated that they are entitled to judgment on this point as a matter of law.

### III. RIPENESS

Defendants also argue that the substantive issues in these cases are not ripe for decision. "A claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Mich Chiropractic Council v Office of Fin & Ins Servs Comm'r*, 475 Mich 363, 371 n 14; 716 NW2d 561 (2006) (quotation marks and citations omitted), overruled on other grounds by *Lansing Sch*, 487 Mich at 371 n 18 (2010). Defendants argue that it is speculation to suggest that plaintiff employees will fail to receive health care benefits when they retire. However, plaintiff employees have not brought a claim to require the provision of health care benefits upon their retirement. Rather, plaintiff employees complain that *currently* three percent of their salaries are being withheld to pay for the health care of others, i.e. present school retirees. This Court addressed a similar situation in *AFSCME Council 25 v State Employees' Retirement Sys*, 294 Mich App 1, 7-8; 818 NW2d 337 (2011):

> Although defendants characterize plaintiffs' claims as seeking relief from a hypothetical event, plaintiffs allege a current confiscation of their compensation without adherence to the provisions of Const 1963, art 11, § 5 and in violation of

their [collective-bargaining agreement] and contractual
rights. Specifically, irrespective of the future availability of
retiree health benefits to current employees, plaintiffs chal-
lenge the reduction in wages from November 1, 2010, through
September 30, 2013. In light of the present reduction in
compensation, defendants' jurisdictional challenge claiming
that plaintiffs are raising a hypothetical scenario regarding
events that may occur upon their retirement fails.

See, also, *Haring Charter Twp v City of Cadillac*, 490
Mich 987 (2012) (holding that the case was ripe for
decision because the city had declared its intent not to
renew the contracts at issue, despite the fact that future
city councils might still decide to renew the contracts),
aff'g *Haring Charter Twp v City of Cadillac*, 290 Mich
App 728 (2010).

Because defendants are confiscating three percent of
plaintiff employees' wages now, not at some hypotheti-
cal point in the future, this case is ripe for decision.

## IV. IMPAIRMENT OF CONTRACT

The trial court concluded that MCL 38.1343e did not
violate the Contract Clauses of the Michigan and
United States Constitutions. US Const, art I, § 10 and
Const 1963, art 1, § 10 both prohibit the enactment of a
statute that impairs a contract and the two provisions
are interpreted similarly. *In re Certified Question*, 447
Mich 765, 776-777; 527 NW2d 468 (1994). The first step
is to determine " 'whether the state law has, in fact,
operated as a substantial impairment of a contractual
relationship.' " *Id.* at 777, quoting *Allied Structural
Steel Co v Spannaus*, 438 US 234, 244; 98 S Ct 2716; 57
L Ed 2d 727 (1978).

### A. IMPAIRMENT OF PENSION BENEFITS

Plaintiff employees argue that requiring present em-
ployees to acquiesce in the confiscation of three percent

of their wages infringes on their right to receive their pensions. All parties agree that those pensions are accrued financial benefits under Const 1963, art 9, § 24 and, therefore, may not be impaired. Plaintiffs essentially argue that because acquiescence in the three percent wage confiscation is a condition of employment, any refusal to do so may result in loss of employment and thus a loss, i.e., impairment, of pension benefits that would have been earned during continued employment. We reject this argument because it amounts to a claim that every condition of employment is subject to constitutional challenge simply because sanctions for failure to comply with such conditions may result in discharge from employment and loss of potential pension benefits. Because prospective increases in pensions are not already accrued, this does not violate Const 1963, art 9, § 24.

### B. IMPAIRMENT OF CONTRACTUALLY SET WAGES

We agree with plaintiffs that MCL 38.1343e operates as a substantial impairment of the employment contracts between plaintiffs and the employing educational entities. The contracts provide for a particular amount of wages and the statute requires that the employers not pay the contracted-for wages, but instead pay three percent less than the contracts provide.[4] We note that this is not a broad economic or social regulation that impinges on certain contractual obligations by happenstance or as a collateral matter. Rather, the statute directly and purposefully requires that certain employ-

---

[4] Defendants argue that plaintiffs failed to attach copies of their collective bargaining agreements to their pleadings. However, defendants do not dispute that plaintiffs *had* contracts that specified how much plaintiff employees were to be paid by their respective districts. Indeed, defendants could not plausibly deny it.

ers not pay contracted-for wages. Such an action is unquestionably an impairment of contract by the state. "In the employment context, there likely is no right both more central to the contract's inducement and on the existence of which the parties more especially rely, than the right to compensation at the contractually specified level." *Baltimore Teachers Union, American Federation of Teachers Local 340, AFL-CIO v Baltimore Mayor & City Council*, 6 F3d 1012, 1018 (CA 4, 1993). See, also, *Buffalo Teachers Federation v Tobe*, 464 F3d 362, 368 (CA 2, 2006) ("Contract provisions that set forth the levels at which union employees are to be compensated are the most important elements of a labor contract. The promise to pay a sum certain constitutes not only the primary inducement for employees to enter into a labor contract, but also the central provision upon which it can be said they reasonably rely.").

In *Baltimore Teachers*, the United States Court of Appeals for the Fourth Circuit held that a temporary furlough plan under which employees lost 0.95 percent of their annual salary for one year constituted a substantial impairment of contract.[5] The present case involves a reduction three times as great and in perpetuity, not merely for a single year. Plaintiff employees have agreed to provide their labor and expertise to the school districts for wages bargained for and set forth in contracts. For the state to mandate a three percent reduction in the contractually agreed-upon price of their labor is unquestionably an impairment of contract by the state.

---

[5] In *Baltimore Teachers*, 6 F3d at 1018 n 8, the court noted that "because individuals plan their lives based upon their salaries, we would be reluctant to hold that any decrease in an annual salary beyond one that could fairly be termed *de minimis* could be considered insubstantial."

That does not, however, resolve the constitutional question. In order to determine whether that impairment violates the Contract Clause, we must determine whether the state has shown that it did not: "(1) 'consider impairing the . . . contracts on par with other policy alternatives' or (2) 'impose a drastic impairment when an evident and more moderate course would serve its purpose equally well,' nor (3) act unreasonably 'in light of the surrounding circumstances[.]' " *Buffalo Teachers*, 464 F3d at 371, quoting *United States Trust Co of New York v New Jersey*, 431 US 1, 30-31; 97 S Ct 1505; 52 L Ed 2d 92 (1977). Put more generally, we are to determine whether the particular impairment is "*necessary* to the public good . . . ." *In re Certified Question*, 447 Mich at 777 (emphasis added).

In addressing these issues, we must consider that the employers in question are themselves governmental entities and that these entities will benefit as a result of the challenged legislation, given that they are to use the monies from the wage reduction to pay "employer contributions" to the retiree health care benefits fund.[6] Because governmental entities are parties to the contracts and benefit from the impairment, we are to employ heightened scrutiny in our review of the statute. *Buffalo Teachers*, 464 F3d at 370-371.

As a general rule, courts have found statutes impairing contractual obligations to be reasonable and necessary when the impairment is the consequence of remedial legislation intended to correct systemic imbalances in the marketplace. Such legislation may have positive

---

[6] According to the record, the three percent wage reduction will cover nearly 40 percent of the overall employer contributions for retiree health care benefits. Affidavit of Phillip Stoddard, Director of the Office of Retirement Services of the Michigan Department of Technology, Management, and Budget, June 17, 2010.

or negative effects on particular economic actors and may in some cases result in the alteration of contractual obligations without offending the Contract Clause. For example, we rejected a Contract Clause challenge in *Health Care Ass'n Workers Compensation Fund v Bureau of Worker's Compensation Director*, 265 Mich App 236; 694 NW2d 761 (2005), which involved a statute designed to unclog the marketplace for workers' compensation insurance by eliminating unduly anticompetitive contractual provisions that punished employers for changing insurers *Id.* at 242. Similarly, the United States Supreme Court has held that correcting an imbalance between gas prices on the interstate and intrastate markets was a significant and legitimate state interest. *Energy Reserves Group, Inc v Kansas Power & Light Co*, 459 US 400, 417; 103 S Ct 697; 74 L Ed 2d 569 (1983). The present case, however, does not involve corrections to the marketplace to assure free competition.

We recognize that there are cases holding that a modest, temporary impairment of governmental contracts may be imposed as a matter of last resort to address a fiscal emergency. However, as the cases relied on by defendants show, such circumstances must be extraordinary and the degree of the impairment with regard to its amount and its duration is central to the question whether the impairment passes constitutional muster. "The severity of the impairment measures the height of the hurdle the state legislation must clear." *Allied Structural*, 438 US at 245. As in *Allied Structural*, the statute at issue here works "a severe, permanent, and immediate change in [contractual] relationships . . . ." *Id.* at 250.

In *Baltimore Teachers*, 6 F3d at 1014, the city of Baltimore responded to sudden budget shortfalls

caused by reductions in state aid of over $37 million during the last three months of 1991 by imposing involuntary furloughs on city employees. These furloughs were not conceived of as a long-term funding mechanism, but instead as a temporary response to a fiscal emergency. *Id* at 1021. The furlough days resulted in Baltimore reducing annual salaries by less than one percent and only for a single year. Moreover, while the furloughs were involuntary, the employees' work hours were reduced to correspond with the reduction in their wages. The Fourth Circuit held that while the actions constituted an impairment of contract, they did not violate the Contract Clause because the wage reduction was temporary, the amount of the resulting reduction in wages was no greater than necessary to meet the immediate budgetary shortfall, and the city had first taken other actions including a significant cut in city services and laying off employees. *Id.* at 1020.

MCL 38.1343e reduces public school employees' wages by an amount more than three times that which concerned the court in *Baltimore Teachers* and with no time off in exchange. More important, MCL 38.1343e is not a temporary measure. It provides that the salaries of public school employees will be *permanently* reduced by three percent of whatever they and their employers agree to. The *Baltimore Teachers* court allowed a far more modest change and only on a temporary basis to address an immediate crisis. Here, the state imposed a permanent impairment on the most fundamental aspect of employment contracts and did so, not to deal with a short-term crisis, but as a long-term mechanism to restructure retirement benefit funding. Defendants presented no evidence in the trial court that other means of undertaking long-term restructuring of retiree health care benefit funding had been attempted or even reviewed. No proofs were offered regarding why

state interference with agreed-upon contracts was necessary in this situation, where the state unequivocally asserts (and plaintiffs concede) that the state has the authority to reduce retiree health care benefits at anytime and in any fashion because, under *Studier*, those benefits are not protected as "accrued financial benefits." The state has not shown that it first undertook to reduce retiree health care benefits, or to require present retirees to contribute to their own health care plans, or to restructure the benefits system in any way other than to legislate state-imposed modifications of freely negotiated contracts.

Defendants also rely on *Buffalo Teachers* where the state of New York imposed a temporary wage freeze preventing scheduled raises for employees of the city of Buffalo from going into effect, which the court held "substantially impairs the workers' contracts with the City." 464 F3d at 368. As in *Baltimore Teachers*, the factors that led the court to uphold the wage freeze were the temporary nature of the freeze, the fact that it did not reduce present wages, but only delayed increases, and the fact that the imposition of the temporary freeze came only after the city had raised taxes and laid off staff. *Id.* at 371-372. In this case, we are far removed from the facts that allowed the challenged governmental actions in *Baltimore Teachers* and *Buffalo Teachers* to survive the challenge.

Other courts have been unwilling to even go that far. In *Univ of Hawaii Prof Assembly v Cayetano*, 183 F3d 1096 (CA 9, 1999), the federal appeals court concluded that the state's action in delaying paydays by a few days, even without a reduction in the actual amount of pay, constituted a substantial impairment of contract because the timing of the regularly scheduled payment was part of the collective bargaining agreement. *Id.* at

1102-1104. As in *Baltimore Teachers* and *Buffalo Teachers*, the *Univ of Hawaii* court noted the higher level of scrutiny applicable to legislative interference with governmental, as opposed to private, contracts and struck down the payday delays, noting the district court's statement that " 'although perhaps politically more difficult, numerous other alternatives exist which would more effectively and equitably raise revenues' " such as additional budget restrictions, the repeal of tax credits, and the raising of taxes. *Id.* at 1107; see, also, *Donohue v Paterson*, 715 F Supp 3d 306 (ND NY, 2010).

Many courts have held that impairments of governmental employees' contracts by the state that have indefinite or permanent application clearly violate the Contract Clause. *Oregon State Police Officers' Ass'n v State*, 323 Or 356; 918 P2d 765 (1996) (striking down a state statute that required public employees to contribute six percent of their salaries to retiree benefits contrary to their contract); *Opinion of the Justices*, 364 Mass 847, 864; 303 NE2d 320 (1973) (striking down legislation increasing present employees' contributions to retiree benefits without an increase in the subject employees' own retirement benefits as "presumptively invalid" under the Contract Clause); *Singer v City of Topeka*, 227 Kan 356, 369; 607 P2d 467 (1980) (hólding that a statute mandating an increase in public employees' contributions to their retirement plan without a commensurate increase in benefits "is an unconstitutional impairment of contract rights"); *Marvel v Dannemann*, 490 F Supp 170 (D Del, 1980); *Hickey v Pittsburgh Pension Bd*, 378 Pa 300; 106 A2d 233 (1954); *Allen v City of Long Beach*, 45 Cal 2d 128; 287 P2d 765 (1955).

For these reasons, we conclude that MCL 38.1343e violates US Const, art I, § 10 and Const 1963, art 1, § 10.

V. TAKINGS CLAUSE

Plaintiffs argue that MCL 38.1343e violates the Takings Clause of the Fifth Amendment of the United States Constitution and Const 1963, art 10, § 2, each of which prohibits the taking of private property for public use without just compensation.[7] Plaintiff employees' salaries are specific funds in which they unquestionably have a property interest. *Sims v United States*, 359 US 108, 110; 79 S Ct 641; 3 L Ed 2d 667 (1959) ("it is quite clear, generally, that accrued salaries are property").

Clearly, the government has "taken" three percent of plaintiff employees' wages in the dictionary-definition sense of the word. The state does not dispute that the school districts are taking possession of wages that, by contract, belong to plaintiff employees and are sending them to state-mandated funds as *employer* contributions. The question, however, is whether this action constitutes a "taking" as it has been defined for purposes of the Fifth Amendment and its Michigan constitutional counterpart. We conclude that it does.

It is well settled that when the government directly seizes property in which a person has a property interest, a Fifth Amendment taking occurs, requiring that the government pay compensation. However, taking cases involving a direct seizure of property typically involve real property and the exercise of eminent domain. Taking jurisprudence also commonly deals with claims that governmental regulatory actions impose such limits on the use of property that they amount to a taking.

Defendants argue that the confiscation or seizure of money, as opposed to physical property, cannot consti-

---

[7] Because the two clauses are coextensive, we will simply refer to "the Takings Clause" for simplicity.

tute a taking. Defendants point out that several courts have held that the general imposition of monetary assessments by the government does not raise Fifth Amendment concerns. See, e.g., *McCarthy v City of Cleveland*, 626 F3d 280 (CA 6, 2010). The law is, however, equally clear that where the government does not merely impose an assessment or require payment of an amount of money without consideration, but instead asserts ownership of a specific and identifiable "parcel" of money, it does implicate the Takings Clause. Indeed, the United States Supreme Court has termed such actions violations "per se" of the Takings Clause. *Brown v Legal Foundation of Washington*, 538 US 216, 235; 123 S Ct 1406; 155 L Ed 2d 376 (2003). In *Brown*, the Court held that where the government asserted a right to control the interest accrued on lawyer trust accounts (IOLTAs), even where such amounts were *de minimis*, it constituted an unconstitutional taking. *Id.* We applied this principle in *Butler v Michigan State Disbursement Unit*, 275 Mich App 309; 738 NW2d 269 (2007), where we found an unconstitutional taking of property when the state disbursement unit that collects and disburses child support payments deposited into the state treasury interest on the amounts awaiting disbursement. The amount in question with regard to the plaintiff, a recipient of child support payments, was merely 83 cents in 2005 and it could certainly be argued that the state could reasonably assess such a sum to pay for the collection service that benefited the children and custodial parent. However, because the money was part of a definable and distinct parcel of money in which the eventual recipient had a property interest, it could not be taken without payment of just compensation.[8]

─────────────

[8] In *Brown*, the government was not required to pay compensation because the clients whose funds had been placed in an IOLTA account could

In *Webb's Fabulous Pharmacies, Inc v Beckwith*, 449 US 155; 101 S Ct 446; 66 L Ed 2d 358 (1980), a Florida county court retained the interest from a fund in its custody intended for the payment of Webb's creditors. *Id.* at 156-158. The Supreme Court held that the Florida statute authorizing the retention of the interest "has the practical effect of appropriating for the county the value of the use of the fund for the period in which it is held . . . ." *Id.* at 164. Further, the interest could not be treated as a fee for the use of the court because another statute specifically provided for a court fee based on the size of the fund deposited with the court. *Id.* "To put it another way: a State, by *ipse dixit*, may not transform private property into public property without compensation . . . ." *Id.*[9]

---

not have earned net income, i.e., interest in excess of administrative costs, had the funds been deposited in a non-IOLTA account. *Brown*, 538 US at 239-240. Similarly, in *Butler*, no compensation was ordered because the government's administrative costs were greater than the plaintiff's accrued interest, and the plaintiff's net loss was therefore zero. *Butler*, 275 Mich App at 313.

[9] In *Eastern Enterprises v Apfel*, 524 US 498, 503-504; 118 S Ct 2131; 141 L Ed 2d 451 (1998), the plaintiff alleged that the Coal Industry Retiree Health Benefit Act, 26 USC 9701 *et seq.*, violated the Takings Clause because it required the plaintiff to pay premiums into a fund to cover benefits for retirees it had not employed. The Supreme Court found this to be unconstitutional. Four of the justices concluded that it violated the Takings Clause, while Justice Kennedy, in an opinion concurring in the judgment and dissenting in part, reached his conclusion under the Due Process Clause. However, the concerns raised by Justice Kennedy regarding the applicability of the Takings Clause do not arise in the instant case. In his opinion, Justice Kennedy stated:

> The Coal Act does not appropriate, transfer, or encumber an estate in land . . . a valuable interest in an intangible . . . *or even a bank account or accrued interest*. The law simply imposes an obligation to perform an act, the payment of benefits. The statute is indifferent as to how the regulated entity elects to comply *or the property it uses to do so*." *Eastern Enterprises*, 524 US at 540 (emphasis added).

That is by no means the case here. MCL 38.1343e confiscates a specific fund, i.e., plaintiff employees' paychecks, and removes three percent of the property before allowing them to take possession of their property.

Defendants rely on two cases from the Federal Circuit Court of Appeals as support for their position, but neither case provides such support. In *Adams v United States*, 391 F3d 1212 (CA Fed, 2004), the federal government had concluded that certain federal law enforcement personnel were administrative employees and, therefore, were not entitled to overtime pay at the rate specified in the Fair Labor Standards Act, 29 USC 201 *et seq*. The employees sued under the act and also asserted that the government's failure to pay overtime at the rate specified in the act constituted a taking. The *Adams* court held that an action to enforce payment of a statutory obligation for the payment, unlike a *contract* for a payment, did not concern a vested property right, without which a taking claim cannot arise. *Id.* at 1223. In *Adams*, the taking claim put the cart before the horse by arguing before any right to overtime pay at the rate specified in the act was determined to exist that the failure to pay overtime at that rate constituted a taking. *Id.* at 1221-1222. That is not the case here because it is undisputed that plaintiff employees have a contract-based property right in their own wages.

*Kitt v United States*, 277 F3d 1330, 1336-1337 (CA Fed, 2002), is similarly inapposite because it involved only a general obligation to pay money under a disputed provision of the tax code. The government did not assert ownership of any particular property and the court relied on that very point to reject the taking claim, noting that "[i]n some situations money itself may be the subject of a taking, for example, the government's seizure of currency or its levy upon a bank account. . . . In the present case, however, the government did not seize or take any property of the Kitts. All it did was to subject them to a particular tax to which they previously had not been subject. That government action did

not constitute a taking of the amount of the tax they had to pay." *Id.* at 1337.

Defendants lastly submit that the Takings Clause is not applicable because plaintiffs seek to invalidate MCL 38.1343e instead of seeking compensation for lost property. Defendants cite *Eastern Enterprises v Apfel*, 524 US 498; 118 S Ct 2131; 141 L Ed 2d 451 (1998), for this proposition, but only Justice Kennedy made such a statement in that case. *Id.* at 545 (Kennedy, J., concurring in the judgment and dissenting in part). Further, the Supreme Court in *Webb's* held a Florida statute unconstitutional under the Takings Clause. It appears that defendants here are arguing that rather than striking down the statute, we are limited to ordering that the confiscated wages be paid back in full as compensation. This unsupported view would require that we approve the continued taking of employees' wages by the government, but require the government to promptly return identical amounts (with interest) to those same employees. We decline to adopt this absurd and costly remedy.

Because MCL 38.1343e takes private property without providing any form of compensation, the trial court correctly ruled that the statute violates the Takings Clauses of the Fifth Amendment and Const 1963, art 10, § 2.

### VI. SUBSTANTIVE DUE PROCESS

We also affirm the trial court's conclusion that MCL 38.1343e is unconstitutional under the Due Process Clauses of the Fourteenth Amendment and Const 1963, art 1, § 17.

> The Fourteenth Amendment to the United States Constitution and Const 1963, art 1, § 17 guarantee that no state shall deprive any person of "life, liberty or property,

without due process of law." Textually, only procedural due process is guaranteed by the Fourteenth Amendment; however, under the aegis of substantive due process, individual liberty interests likewise have been protected against certain government actions regardless of the fairness of the procedures used to implement them. The underlying purpose of substantive due process is to secure the individual from the arbitrary exercise of governmental power. [*People v Sierb*, 456 Mich 519, 522-523; 581 NW2d 219 (1998) (some quotation marks omitted; citations omitted).]

"The essence of a claim of violation of substantive due process is that the government may not deprive a person of liberty or property by an *arbitrary* exercise of power." *Landon Holdings, Inc v Grattan Twp*, 257 Mich App 154, 173; 667 NW2d 93 (2003).[10]

Defendants argue that the compelled contributions are not arbitrary because they are assessed against public school employees to support a fund that pays for retiree health care for public school employees. This, however, is an overly general characterization that gives the false impression that plaintiff employees are being required to contribute toward the funding of their own retirement benefits. The mandatory contributions imposed on current public school employees do not go to fund their own retirement benefits but, instead, to pay for retiree health care for already-retired public school employees.

While the present employees and the retired employees have in common their present or former employ-

---

[10] Defendants argue that plaintiffs must show governmental action that shocks the conscience, but that standard applies only to executive, not legislative, action. See *Sacramento Co v Lewis*, 523 US 833, 846; 118 S Ct 1708; 140 L Ed 2d 1043 (1998) ("[F]or half a century now we have spoken of the cognizable level of *executive* abuse of power as that which shocks the conscience.") (emphasis added).

ment by a public school employer, that does not mean that their interests as individuals (or even as groups of employees) are identical. Defendants have offered no legal basis for the conclusion that it comports with due process to require present school employees to transfer three percent of their incomes in order to fund the retirement benefits of others. Rather, it is a mandatory, direct transfer of funds from one discrete group, present school employees, for the benefit of another, retired school employees. The fact that these groups share employers does not render the scheme outside the constitutional protection of substantive due process.

Defendants seek to blur the issue by repeatedly arguing in their briefs that it is only fair for those who receive a health care benefit to help pay for it.[11] This

---

[11] See, e.g., defendants-appellants' brief ("[i]n exchange [for payment of three percent of their income], the Trust fund *will pay* for the cost of health care for . . . Plaintiffs-Appellees' when they retire") (emphasis added); ("[plaintiffs] are simply being required to pay for a *future benefit*") (emphasis added); ("Since Plaintiffs . . . *are the beneficiaries* of paid [retiree] health care, it is only fair that they help pay a portion of its costs.") (emphasis added); ("Once individual plaintiffs retire, they *will* receive the benefit of [their] contributions . . . .") (emphasis added); (MCL 38.1343e is a rational attempt to impose a portion of the cost of retiree health care on those persons who. . . *will receive* those very health care benefits when they retire.") (emphasis added); (it is proper to "[r]equir[e present employees] to contribute toward the cost of the health care that they *will receive* when they retire") (emphasis added); ("It is only fair that those who receive a health care benefit should have to help pay for it."); ("it is only fair and reasonable for those who *will benefit* from health care coverage to have to pay for a portion of its costs") (emphasis added). Defendant-cross-appellant's brief similarly states: ("Once Plaintiffs retire, their health care costs . . . will be paid from the assets in this fund."); ("Plaintiffs will receive health care when they retire in exchange for their contributions."); ("Plaintiffs will receive health care when they retire in exchange for their contributions."). At the same time, however, defendant-cross-appellee's brief repeatedly affirms the state's position that it has no obligation to pay health care benefits to the plaintiffs upon their retirement: ("no contract exists that requires the payment of retiree health care costs . . . . providing for health care

principle, however, is as irrelevant as it is self-evident. As noted, the statute does not provide that the monies obtained by the involuntary collection of three percent of the workers' wages will be used to fund the retiree health care benefits of those whose wages are being taken.

In *Studier*, 472 Mich 642, our Supreme Court made clear that public school retiree health care benefits do not constitute "accrued financial benefits" and so are not subject to Const 1963, art 9, § 24. The first clause of that provision provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Because this clause does not apply to retiree health care benefits, the state has no contractual obligation to provide present state employees with such benefits and employees have no enforceable or vested right to receive such benefits. As a legal matter, an unenforceable promise is no promise at all.

Under *Studier*, the second clause of the provision, mandating that benefits be paid for in the year they are accrued,[12] is also not applicable to retiree health care benefits. Thus, the three percent of their wages being withheld does not go to prefund the present employees' own benefits. Moreover, these employees are not pos-

---

benefits for public school retirees does not create a contractual right"); ("[Plaintiff] asserts that MCL 38.1343e impairs an 'accrued financial benefit' because they are required to pay 3% of their compensation. However, retiree health care is not an 'accrued financial benefit.' "); ("MCL 38.1391 did not create a contract which require[s] MPSERS to provide retiree health care"); ("Plaintiffs do not have a contract to receive health care when they retire.").

[12] "Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities." Const 1963, art 9, § 24.

sessed of any right to receive such benefits, however paid for, upon their own retirement.

We cannot envision a court approving as constitutional a statute that requires certain individuals to turn a portion of their wages over to the government in return for a "promise" that the government will return the monies, with interest, in 20 years when the government retains the unilateral right to "cancel" the "promise" at any time and does not even agree that, if they do so, the monies taken will be returned. School employees cannot constitutionally be required to "loan" money to their employer school districts,[13] with no enforceable right to receive anything in exchange and without even a binding guarantee that the "loan" will be repaid.

Defendants argue that the present case is analogous to *Mich Mfr Ass'n v Workers' Disability Compensation Bureau Director*, 134 Mich App 723; 352 NW2d 712 (1984), where this Court upheld a statute requiring all employers in the state to contribute to a fund to help defray the costs of workers' disability compensation for the logging industry. However, that case considered only whether the statute was enacted for a proper purpose and did not address whether it met the second prong of the constitutional test. *Id.* at 733-735. Moreover, the statute related to the broad policy objectives of the workers' compensation system that affect every worker and employer in the state. Workers' compensation legislation was adopted 100 years ago to create a system to share risks and to provide for the limited, but prompt, compensation of injured workers. In addition to obtaining general insurance or insuring themselves, all employers in the state may be required to contribute to specialized funds such as the Second Injury Fund, the

_____

[13] We reiterate that the wages appropriated from employees are defined as "employer contributions" to the fund.

Silicosis, Dust Disease, and Logging Industry Compensation Fund, and the Self-Insurers' Security Fund. MCL 418.551. These assessments are part of a statewide economic regulatory system and contributions to the funding of that system are required of all employers in the state. The statute in *Mich Mfr* represented a small modification in an overall system of sharing risks intended to assure stability in the industrial marketplace.

The instant case is wholly different. Payment of health care benefits owed by the government to a particular set of its retired employees is not analogous to the maintenance of a statewide risk-sharing system to assure market and economic stability for the private sector. Rather, it is a question of the government's meeting a particular set of its own fiscal obligations. Here, the government seeks to do so by requiring a small subset of Michigan's population to surrender three percent of their wages, above and beyond that which they pay in taxes, with no guarantee of anything in return, to meet the government's obligation to other individuals. Defendants posit no evidence or even argument to suggest that the funding of these retirement benefits cannot be satisfied by measures that do not raise due process concerns.[14] We stress that the mechanism defined in MCL 38.1343e is *neither* one involving general taxation for a general fund with specific uses of the monies later determined by the Legislature *nor* one

---

[14] We offer no opinion regarding what funding choices would best fulfill the policies chosen by the Legislature, but note that the parties agree that such choices exist. The state always retains the authority to modify general taxes and it is not disputed that, under *Studier*, retiree health care benefits may be modified or reduced by statute. It would also seem that the constitutional defects in the three percent wage assessment could be addressed by adopting legislation categorizing retiree health care benefits as "accrued financial benefits."

imposing a fee for service to the payee. It is also not a mechanism that requires individuals to fund benefits that they themselves have a vested right to receive. The statute instead provides that the government confiscate the income of one discrete group in order to fund a specific governmental obligation to another discrete group. The fact that the members of one of these groups work for the same entities from which the members of the other group retired does not provide a rational basis to mandate what amounts to a direct transfer of income. MCL 38.1343e is thus unreasonable, arbitrary, and capricious and violates the Due Process Clause.

## VII. CONCLUSION

We are not unmindful of the budgetary challenges facing local school districts and Michigan's institutions of higher education. Moreover, we recognize that the state Legislature is within its authority to adopt legislation to aid these entities as they seek to address those budgetary challenges. In exercising that authority, however, the Legislature remains constrained by the state and federal Constitutions and the rights they guarantee. MCL 38.1343e violates multiple provisions of these Constitutions. Accordingly, we affirm the trial court's orders granting summary disposition or partial summary disposition in favor of plaintiffs in each of the cases before us, terminate the stay ordered by this Court on March 18, 2011, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

BECKERING, J., concurred with SHAPIRO, P.J.

SAAD, J. (*concurring in part and dissenting in part*). I concur with the majority's conclusion that the plaintiff

labor organizations in Docket No. 303702 have standing to pursue this action on behalf of their members. I also concur with the majority's conclusion that plaintiffs' claims are ripe for judicial review. The majority also correctly concludes that MCL 38.1343e does not impair or diminish accrued financial benefits of a pension plan in violation of Const 1963, art 9, § 24 because benefits earned after July 1, 2010, had not yet accrued when the statute was enacted.

However, I respectfully disagree with the majority's key holdings that MCL 38.1343e violates the Contracts Clauses of the Michigan and United States Constitutions, US Const, art I, § 10 and Const 1963, art 1, § 10, the Takings Clauses of the Fifth Amendment and Const 1963, art 10, § 2, and the Due Process Clauses of the Fourteenth Amendment and Const 1963, art 1, § 17. Accordingly, I dissent from the majority's decision to affirm the orders of the Court of Claims granting summary disposition in favor of plaintiffs in each of the cases before us.

## I. NATURE OF THE CASE

In 1974 PA 244, the Michigan Legislature amended the Public School Employees Retirement Act, 1945 PA 136, to provide, on or after January 1, 1975, health care benefits for retired employees of the Michigan public schools. The act provided that the Michigan Public School Employees Retirement System (MPSERS) would pay health care premiums for retired employees and their dependents under any group health plan authorized by the retirement commission. MCL 38.325b(1). In 1980, the Legislature enacted the Public School Employees Retirement Act of 1979, 1980 PA 300, MCL 38.1301 *et seq.*, setting forth the health care coverage provision in MCL 38.1391(1). Pursuant to

MCL 38.1341, public schools must contribute to the MPSERS a percentage of the total amount of their payroll to pay the cost of health care premiums for retirants and their dependents. In other words, Michigan taxpayers have, for years, paid for public school employees' retiree health care benefits.

Over the years, the number of retiree participants in the MPSERS program has grown significantly and, therefore, so has the expense to the taxpaying public, which knows little about this unseen, but enormous, cost to the public education system. Indeed, Phillip Stoddard, Director of the Office of Retirement Services of the Michigan Department of Technology, Management, and Budget, estimated that, for the year beginning October 1, 2010, the cost of health care for retirees and their dependents would exceed $920,000,000. Thus, it now costs school districts (meaning taxpayers) almost a billion dollars a year for retiree health care alone. Faced with these unsustainable, increasing costs, the Legislature has passed various amendments to increase the copays and deductibles that retirees pay for their health care. These modifications that require retired public school employees to contribute to their health care costs have survived constitutional challenge from education workers. Indeed, our Supreme Court has ruled that the Legislature created and may revoke this taxpayer-funded benefit and that retiree health care benefits are not a constitutionally protected contract right, nor a vested right under the Michigan Constitution.

With the enactment of MCL 38.1343e, the Legislature now requires current public school employees to not only pay copays and deductibles upon retirement, but also to pay dollars directly into the program from which they will reap generous retiree health care ben-

efits. Again, the public school employees object by claiming constitutional infirmities that, in truth, do not exist. I respectfully disagree with the majority's ruling because the challenged legislation is constitutional.

## II. IMPAIRMENT OF CONTRACT

The majority's holding that MCL 38.1343e violates the Contracts Clauses is incorrect because, as a matter of law, MCL 38.1343e has not "operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co v Spannaus*, 438 US 234, 244; 98 S Ct 2716; 57 L Ed 2d 727 (1978). Indeed, MCL 38.1343e cannot possibly implicate these constitutional provisions because it does not affect, much less impair, any contract. Simply put, to constitute an impairment of contract, there must first be a contract that is impaired. Thus, for plaintiffs to state a claim, MCL 38.1343e must have altered either a contract between the state itself and the public school employees or the public school employees' contracts with some third party. MCL 38.1343e does neither. And, because no contract has been impaired, this claim must fail.

I begin with the established principle that legislative enactments are presumed to be constitutional absent a clear showing to the contrary. *Mich Soft Drink Ass'n v Dep't of Treasury*, 206 Mich App 392, 401; 522 NW2d 643 (1994). "The party challenging the constitutionality of legislation bears the burden of proof." *Id*. The majority holds that MCL 38.1343e violates the Contracts Clauses of the United States and Michigan Constitutions. US Const, art I, § 10 and Const 1963, art 1, § 10. US Const, art I, § 10, cl 1, provides: "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." Similarly, Const 1963, art 1, § 10

states: "No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted." "Our state constitutional provision is not interpreted more expansively than its federal counterpart." *Attorney General v Michigan Pub Serv Comm*, 249 Mich App 424, 434; 642 NW2d 691 (2002). The constitutional prohibition on impairment of contracts is not absolute and must be accommodated to the state's inherent police power to safeguard the vital interests of the people. *Health Care Ass'n Workers Compensation Fund v Bureau of Worker's Compensation Director*, 265 Mich App 236, 240-241; 694 NW2d 761 (2005).

First, under the Michigan Supreme Court's ruling in *Studier v Michigan Pub Sch Employees' Retirement Bd*, 472 Mich 642; 698 NW2d 350 (2005), the public school employees have no contract with the state for retiree health care benefits, nor do the public school employees have vested rights in retiree health care benefits.[1]

---

[1] In *Studier*, the Michigan Supreme Court held that MCL 38.1391(1) does not create a contract with public school retirees for retiree health care benefits. The plaintiffs, six public school retirees, argued that increases in their prescription drug copayments and deductibles violated US Const, art I, § 10, and Const 1963, art 1, § 10, both of which prohibit a law that impairs an existing contractual obligation. *Studier*, 472 Mich at 647-648. The Supreme Court noted that, in general, "one legislature cannot bind the power of a successive legislature." *Id.* at 660. This principle can be limited where it is in tension with the constitutional prohibitions against the impairment of contracts. *Id.* at 660-661. However, "such surrenders of legislative power are subject to strict limitations that have developed in order to protect the sovereign prerogatives of state governments." *Id.* at 661 (citation omitted). Thus, a strong presumption exists that statutes do not create contractual rights. *Id.* Absent a clear indication that the Legislature intended to bind itself contractually, a law is presumed not to create contractual or vested rights. *Id.* To form a contract, the language of a statute must be plain and susceptible of no other reasonable construction than that the Legislature intended to bind itself. *Id.* at 662. Absent an expression of such an intent, "courts should not construe laws declaring a scheme of public regulation as also creating private contracts to which the state is a party." *Id.*

Second, the collective bargaining agreements (CBAs) between the public school employees and various school districts are not even touched, much less impaired. Though the plaintiffs in Docket No. 303704 argue that their breach of contract count is based on CBAs with their local school districts entitling them to compensation at rates established in the agreements, in their complaint, they did not allege that any CBAs existed or that such agreements formed the basis of the breach of contract count and they did not attach any contracts to their complaint.[2] Further, the state is not a party to the

Applying these principles, the *Studier* Court concluded that the plaintiffs had failed to overcome the strong presumption that the Legislature did not intend to surrender its legislative powers by entering a contractual agreement to provide retiree health care benefits to public school employees. *Id.* at 663. "Nowhere in MCL 38.1391(1), or in the rest of the statute, did the Legislature provide for a written contract on behalf of the state of Michigan or even use terms typically associated with contractual relationships, such as 'contract,' 'covenant,' or 'vested rights.' " *Id.* at 663-664. Had the Legislature intended to surrender its power to amend the statute to remove or diminish the benefits provided, it would have done so explicitly. *Id.* at 665.

*Studier* is directly controlling here. Further, though the *Studier* Court did not specifically address MCL 38.1391(4), the Court referred generally to "the rest of the statute" in stating that no written contract on behalf of the state was created. In any event, MCL 38.1391(4), like MCL 38.1391(1), contains no language expressing any intent by the Legislature to surrender its powers, nor does it contain any terms typically associated with contractual relationships. Therefore, no contracts entitling plaintiff employees to receive retiree health care benefits exist.

[2] Plaintiffs in Docket No. 303704 note that an employment contract necessarily exists for every employee who performs services in exchange for compensation regardless of whether there was a CBA and, thus, that the failure to plead the existence of CBAs was not fatal to plaintiffs' claims. The majority echoes this notion, asserting that defendants cannot "plausibly deny" that plaintiffs worked under CBAs. Again, however, plaintiffs did not merely fail to allege that any CBAs existed, they failed to allege that *any* employment contract for wages was impaired by the operation of MCL 38.1343e.

CBAs and cannot be bound by them. *Equal Employment Opportunity Comm v Waffle House, Inc*, 534 US 279, 294; 122 S Ct 754; 151 L Ed 2d 755 (2002); *Baraga Co v State Tax Comm*, 466 Mich 264, 266; 645 NW2d 13 (2002).

In any case, obviously, the CBAs do not address the retiree health care system because this is a benefit created by the state. By virtue of MCL 38.1343e, the state now requires public school employees to contribute money to help defray the cost of retiree health care benefits. This statutory mandate is between the state and each worker, and this has nothing to do with any contract. Regardless of the wage levels negotiated in CBAs for principals, teachers, or noninstructional workers, those levels are not affected. If, for example, a school district has contracted with a teacher to pay him or her $80,000 a year, the state's mandate that the employee pay three percent under MCL 38.1343e does not alter the school district's contractual obligation. Indeed, the state Legislature could change the mandate to four percent or one percent and the school district would nevertheless be required by contract (CBA) to pay the teacher $80,000 a year. MCL 38.1343e simply sets forth a mechanism to ensure that each member of MPSERS makes this contribution by requiring school districts to deduct the contribution from the member's pay and submit it to the retiree health care system. But the particular method is quite apart from the terms of any labor agreement and, indeed, the state could have enforced this mandate by a lump sum or periodic payments made directly by each member. That the state chose a paycheck deduction method simply does not convert a permissible legislatively mandated contribution into an unconstitutional impairment of contract. Clearly, this case concerns the state's demands or financial assessment upon each public school employee,

and has nothing to do with any contract between each
employee and the state, or a third party. Accordingly,
this constitutional theory to challenge this legislation
should be rejected.

### III. TAKINGS CLAUSES

I also dissent from the majority's holding that the
plaintiffs in Docket Nos. 303704 and 303706 established
that MCL 38.1343e effectuates a taking under the
United States and Michigan Constitutions. Quite sim-
ply, MCL 38.1343e does not effectuate a taking of
private property for which the government must give
just compensation. Further, no caselaw holds that a
"taking" occurs when the Legislature requires a public
school employee to contribute money as a condition for
receiving benefits in a state-created retirement health
care program, designed for the benefit of the employee.

US Const, Am V provides that private property shall
not "be taken for public use, without just compensa-
tion." This prohibition applies against the states
through the Fourteenth Amendment. *Webb's Fabulous
Pharmacies, Inc v Beckwith*, 449 US 155, 160; 101 S Ct
446; 66 L Ed 2d 358 (1980); *K & K Constr, Inc v Dep't of
Natural Resources*, 456 Mich 570, 576 n 3; 575 NW2d
531 (1998). Also, Const 1963, art 10, § 2 states: "Private
property shall not be taken for public use without just
compensation therefor being first made or secured in a
manner prescribed by law." The Takings Clauses do not
prohibit the taking of private property; rather, they
place a condition on the exercise of that power. *First
English Evangelical Lutheran Church of Glendale v Los
Angeles Co*, 482 US 304, 314; 107 S Ct 2378; 96 L Ed 2d
250 (1987); *Chelsea Investment Group LLC v City of
Chelsea*, 288 Mich App 239, 261; 792 NW2d 781 (2010).
"This basic understanding of the [Fifth] Amendment

makes clear that it is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English*, 482 US at 315.

Here, plaintiffs do not seek "just compensation" for the "taking of property" arising from an otherwise proper governmental interference. *Id.* Rather, they alleged that MCL 38.1343e is unconstitutional as applied to them and sought a declaratory ruling to that effect. The trial court granted the requested relief, ordering defendants to "cease and desist from enforcing or implementing MCL 38.1343e and from deducting 3% of members' compensation," in addition to requiring defendants to return, with interest, the contributions already deducted. This declaratory ruling invalidating the statute was not an award of just compensation for a taking effectuated by an otherwise proper governmental action. Thus, the relief requested and granted in these cases is not that contemplated under the Takings Clauses, and the rulings should be reversed.

The majority's application of the Takings Clauses to plaintiffs' claims is legally unsupportable. Again, requiring a monetary contribution to a retiree health care plan does not trigger the clauses because no constitutionally protected property interest is invaded. The percentage deductions from plaintiff employees' compensation are not physical appropriations of property. Money is fungible and, quite simply, it is artificial to view the deductions as a taking of property requiring just compensation. *United States v Sperry Corp*, 493 US 52, 57-58, 62 n 9; 110 S Ct 387; 107 L Ed 2d 290 (1989). The deductions are merely the Legislature's chosen means to effectuate the employees' obligation under MCL 38.1343e to contribute to their own retirement

system in which, under existing law, MCL 38.1391, they will participate upon retirement.

I recognize that, in limited situations, a specific fund of money may be considered property for Takings Clause purposes, *Webb's Fabulous Pharmacies*, 449 US at 156, but no such fund exists here. Further, it is well established that a specific property right or interest must be at stake in order to find a regulatory taking. See *Eastern Enterprises v Apfel*, 524 US 498, 541-542, 544-546; 118 S Ct 2131; 141 L Ed 2d 451 (1998) (Kennedy, J., concurring in the judgment and dissenting in part). Justice Kennedy noted that although the statute at issue in that case imposed a financial burden, it did so without operating on or altering an identified property interest. *Id.* at 540.

> The [statute] does not appropriate, transfer, or encumber an estate in land (*e.g.*, a lien on a particular piece of property), a valuable interest in an intangible (*e.g.*, intellectual property), or even a bank account or accrued interest. The law simply imposes an obligation to perform an act, the payment of benefits. The statute is indifferent as to how the regulated entity elects to comply or the property it uses to do so. [*Id.*]

In *Eastern Enterprises*, Justice Kennedy would have held that the Takings Clause did not apply. *Id.* at 547-550. Contrary to the majority's assertion that "only Justice Kennedy made such a statement," Justice Breyer, joined by Justices Stevens, Souter, and Ginsburg, agreed with Justice Kennedy that the Takings Clause did not apply because the case involved "not an interest in physical or intellectual property, but an ordinary liability to pay money, and not to the Government, but to third parties." *Id.* at 554 (Breyer, J., dissenting). Justice Breyer noted that in *Webb's Fabulous Pharmacies*, the monetary interest at issue "arose

out of the operation of a specific, separately identifiable fund of money. And the government took that interest for itself." *Id*. at 555.[3]

The majority labors to find a taking by denominating money as property, despite contrary law and despite our Supreme Court's holding constitutional prior modifications of the MPSERS with regard to copays and deductibles—also money. The majority reasons that increasing the dollars a retiree must pay is different from requiring current public school workers to contribute money to pay for current retirees who, incidentally, may have been coworkers yesterday and whom current workers may join tomorrow. Regardless, of course, this distinction has no relevance because it is a retiree health care system in which all may share and to which the Legislature has said all must contribute.

Again, MCL 38.1343e states a condition that, after the effective dates of the statute, public school employees

---

[3] And, a point the majority avoids is that, on the basis of the analysis expressed by the five justices in *Eastern Enterprises*, lower federal courts have repeatedly held that the imposition of an obligation to pay money does not constitute a taking of private property. See *Parella v Retirement Bd of the Rhode Island Employees' Retirement Sys*, 173 F3d 46, 50 (CA 1, 1999); *Commonwealth Edison Co v United States*, 271 F3d 1327, 1329, 1340 (CA Fed, 2001) ("while a taking may occur when a specific fund of money is involved, the mere imposition of an obligation to pay money, as here, does not give rise to a claim under the Takings Clause of the Fifth Amendment"); *Adams v United States*, 391 F3d 1212, 1225 (CA Fed, 2004) ("We decline to treat a statutory right to be paid money as a legally-recognized property interest, as we would real property, physical property, or intellectual property."). In *McCarthy v City of Cleveland*, 626 F3d 280, 286 (CA 6, 2010), the court held "that the Takings Clause 'is not an appropriate vehicle to challenge the power of [a legislature] to impose a mere monetary obligation without regard to an identifiable property interest,' " quoting *Swisher Int'l, Inc v Schafer*, 550 F3d 1046, 1057 (CA 11, 2008). The *McCarthy* court noted that although some lower federal courts have followed the *Eastern Enterprises* plurality's taking analysis, those courts "have done so only where a specific private property interest is *retroactively* affected." *McCarthy*, 626 F3d at 286.

must contribute money to a program the Legislature created for those employees upon retirement. Thus, any property interests in the wage levels contained in plaintiffs' respective CBAs were not *retroactively* affected. See *McCarthy*, 626 F3d at 286, and cases cited therein. Further, unlike in *Webb's Fabulous Pharmacies* and *Phillips v Washington Legal Foundation*, 524 US 156; 118 S Ct 1925; 141 L Ed 2d 174 (1998), no extraction of interest generated in a specific fund of money has occurred. The essence of plaintiffs' claim is that the state may not take future wages established by their CBAs. Though this is a fallacy because the state demands payment from each worker irrespective of any negotiated wage levels, if there is a remedy, the proper remedy lies in contract, not taking, and a valid taking claim will lie only when the property rights exist independently of the claimants' so-called contracts with the government. *Niagara Mohawk Power Corp v United States*, 98 Fed Cl 313, 315 (2011). See also *Peick v Pension Benefit Guaranty Corp*, 724 F2d 1247, 1276 (CA 7, 1983); *Klamath Irrigation Dist v United States*, 67 Fed Cl 504, 534 (2005), mod on other grounds 68 Fed Cl 119 (2005). Importantly, however, the fact that a contract theory may not yield a recovery or provide a full remedy in a given case " 'does not give life to a takings theory.' " *Niagara Mohawk*, 98 Fed Cl at 316, quoting *Home Savings of America, FSB v United States*, 51 Fed Cl 487, 495-496 (2002). In other words, that a Contracts Clause claim provides no relief does not resurrect an equally spurious taking claim. Which brings us to plaintiffs' substantive due process claim, which well-established law says cannot be maintained simply because the "taking" and "impairment" claims provide no remedy.

## IV. SUBSTANTIVE DUE PROCESS

I also dissent from the majority's holding that the plaintiffs in Docket No. 303702 established that MCL

38.1343e is unconstitutional under the Due Process Clauses of the Fourteenth Amendment and Const 1963, art 1, § 17. Because the Takings and Contracts Clauses provide explicit textual sources of constitutional protection regarding the type of governmental conduct at issue (but provide no relief for the reasons already stated), plaintiffs are precluded from asserting generalized substantive due process claims. That the majority holds otherwise is clearly contrary to our constitutional jurisprudence. *Sacramento Co v Lewis*, 523 US 833, 842; 118 S Ct 1708; 140 L Ed 2d 1043 (1998). The clause should not be invoked to "do the work" of other constitutional provisions, even when they offer a plaintiff no relief. *Stop the Beach Renourishment, Inc v Florida Dep't of Environmental Protection*, 560 US ___, ___; 130 S Ct 2592, 2605-2606; 177 L Ed 2d 184, 200 (2010) (plurality opinion by Scalia, J.). The plaintiffs in Docket Nos. 303704 and 303706 expressly alleged contract and taking claims. The complaint in Docket No. 303702 alleges only a substantive due process claim, but the label placed on a claim is not dispositive. *Flying J Inc v City of New Haven*, 549 F3d 538, 543 (CA 7, 2008); *Johnston v Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989). The gravamen of an action is determined by considering the entire claim. *Maiden v Rozwood*, 461 Mich 109, 135; 597 NW2d 817 (1999). Because the underlying allegations are that MCL 38.1343e operates to extract a percentage of plaintiff employees' compensation, the claims fall within the explicit sources of protection provided by the Takings or Contracts Clauses. Resort to the generalized notion of substantive due process is thus improper. *Cummins v Robinson Twp*, 283 Mich App 677, 704; 770 NW2d 421 (2009). Accordingly, I would hold that the trial court plainly erred by granting summary disposition to plaintiffs on the substantive due process claims.

V. CONCLUSION

To discharge their solemn duty under the Constitution, courts must invalidate clearly unconstitutional legislation, but must also defer to the Legislature when the public policy is one that may offend the litigants, but not the Constitution.

Here, because the challenged public policy does not even touch upon, much less impair, contracts and no property is taken by the state in the sense contemplated by the Fifth Amendment, and because substantive due process is not a catchall for failed constitutional claims, it would have been prudent and in keeping with our Court's limited charge under the Constitution to uphold this legislation as constitutional, because it is.